MICHAEL O'MARA, Administrator of Thomas O'Mara, Respondent, *v.* THE HUDSON RIVER RAILROAD COMPANY, Appellants.

NEGLIGENCE. NONSUIT. EXCESSIVE DAMAGES. In an action against a railroad company to recover damages for the negligent killing of a person, the plaintiff introduced evidence tending to show that the bell was not rung nor the whistle blown at the crossing where the accident occurred, as required by the statute. *Held*, that the absence of this statutory signal was evidence of negligence which would permit the jury to hold the railroad company responsible. *Held*, also, that the running of an engine across much frequented thoroughfares, as the streets of a village, by a fireman alone, without an engineer, as was proved in this case, would justify a jury in finding a want of proper care on part of the defendants. *Hence*, the defendants' motion for a nonsuit at the close of plaintiff's evidence, in which the above facts were disclosed, was properly denied.

It is the duty of engineers to exercise greater care toward the young, as well as toward the aged and infirm, than toward persons of mature years or of more active bodily powers, and the same foresight and vigilance can not be demanded of the former, in guarding against dangers, that would be of the latter. What might be negligence in a person of ma ture years might not be negligence in a boy eleven and a half years old. *Hence*, it would seem that the general question of the contributory negligence of the person injured was, in accordance with the uniform tenor of decisions in our courts, properly left to the jury.

Both principle and authority concur in maintaining that a jury would have the right, acting upon their own knowledge and without proof, to say that the services of a boy from eleven until twenty-one years of age were valuable to his father, and to estimate their value, which is equivalent to a decision that $1500 are not excessive damages to award in such case. See opinion of HUNT, Ch. J., and cases cited.

THE plaintiff, as administrator of his son Thomas, brought an action against the defendants, to recover damages for the negligent killing of his son, on the 13th of April, 1866. At the close of the plaintiff's evidence, the defendants moved for a nonsuit, which was denied. The plaintiff obtained a verdict for $1,500, for which judgment was entered. The defendants moved at the Special Term for a new trial, on the ground that the verdict was against evidence, that it was against the weight of evidence, and that the damages were excessive. This motion was denied. The defendants ap-

pealed to the General Term of the third district, where the judgment was affirmed. The defendants now appeal to this court.

When the defendants moved for a nonsuit, the evidence showed that the deceased was a lad, eleven and a half years of age, that he was killed at Drum's crossing, Greenbush, East Albany, at a street called Second avenue, under the following circumstances: The crossing in question is a thoroughfare where there is a great deal of crossing at all times of the day. There are two tracks at the point, which are five feet apart, and at a distance of ninety feet northerly from the north sidewalk, are switch tracks setting off from each of these tracks. At the time in question a train of empty freight cars was being backed northerly over the easterly track of the crossing at this point. At about the same time the engine "Jones," which had been standing on the westerly side switch, was put in motion and passed southerly along the switch track and along the westerly track to and south of this crossing. As it passed over the southerly side of the avenue, it struck the deceased, who was immediately killed by the collision. It appeared, that the deceased had been sent by his mother, at about four o'clock in the afternoon, with a pail, upon an errand, that his father at the same time had given him money and directed him to purchase and bring home a glass of beer. The house of the plaintiff was upon the east side of the tracks, and the place to which the boy was sent was upon the west side of the tracks. It is a fair conclusion from the evidence, that, when the lad upon his errand reached the easterly track, he encountered the empty freight train, being backed northerly; that he stood there till it passed, then crossed the same, with the intervening space, and reached the easterly side of the west track, where he was struck and instantly killed by the engine "Jones," which was going southerly, at the rate of ten or eleven miles an hour.

When the plaintiff's evidence closed, there was evidence tending to show, that no bell upon the "Jones" was rung, and that the whistle was not blown, as it was crossing this

street. The "Jones" was run by the fireman only, the engineer not being on board. It was testified, that the bell upon the "Jones," was rung as a signal to the switch man to let the engine out upon the main track, but there was no evidence for what length of time it was rung, or until what point on the road the ringing continued.

At the close of the plaintiff's evidence, the defendants moved for a nonsuit, on the grounds, that the defendants were not guilty of negligence, and that the negligence of the deceased caused or contributed to his death. The motion was denied, and the defendants gave evidence upon the issues. The case was then submitted to the jury, who rendered a verdict for the plaintiff. No questions of evidence are made in this case. There are no exceptions to the charge, and the motion for a nonsuit was not renewed at the close of the defendants' evidence.

*J. H. Reynolds,* for the appellants.

*A. J. Parker,* for the respondent.

HUNT, Ch. J. The only questions to be here considered arise upon the motion for a nonsuit made at the close of the plaintiff's evidence. No question of law was presented to the court at any other point of the trial than at the making of that motion.

The points there presented were, first, that there was no negligence on the part of the defendant, and, second, that the negligence of the plaintiff contributed to the result.

On the first point, of the defendants' negligence, the evidence tended to show that the bell was not rung or the whistle blown, as required by the statute. Two witnesses testified, that they were present at the occurrence of the accident, and that they did not recollect that the bell was rung or the whistle blown; and no evidence whatever was given to the contrary, when the motion was made. It did appear that the bell was rung as a signal to the switch tender, but it did not appear that it was continued until the crossing was reached. (Laws 1854, § 7, Stat. at Large, p. 643.) This court

has repeatedly held, that the absence of this statutory signal was evidence of negligence, which would permit the jury to hold the railroad company responsible.

Again, the " Jones " was run by a fireman only, the engineer not being on board. Is it a performance of that degree of care and attention which the law exacts of a railroad company, that it should intrust its engines to the custody of a subordinate when crossing public thoroughfares? I suppose the jury may be assumed to know, and may be permitted to act upon the knowledge possessed by every intelligent man, first, that a fireman is not expected to possess the skill and knowledge in the management of a locomotive engine that is required of an engineer; and, second, that the manager of an engine can see upon one side only of his machine for a short distance ahead of him. This latter fact appears in almost every case before us, and is expressly proved by the fireman on his examination, in a subsequent stage of the present case. If the " Jones " had been under the charge of an engineer who understood its management, who knew his duties in giving warning of his approach, and had been, also, provided with an attendant fireman, can any one say that this calamity might not have been avoided?

Upon each of the two grounds mentioned, to wit, the absence of the bell or whistle, and the running of the " Jones " by a fireman alone, without an engineer, I am of the opinion that the jury were justified in finding a want of proper care on the part of the defendants, and that the motion for a nonsuit was properly denied.

Was there negligence of the deceased, which caused or contributed to his death? In our own courts, as well as in the recent English cases, the apparent negligence of the party injured was greater than in the present case. (*Belbee* v. *The London B. & S. C. R. W. Co.*, 18 Com. B. [N. S.] p. 18; *Stapley* v. *The Same*, 1 Law Rep., Ct. of Excheq., p. 21; *Stubley* v. *Same*, id. p. 13.) The court, however, held, in these cases, that the question must be left to the jury, and in each case sustained their finding, that there was no contributing negligence on the part of the person injured. In

the present case, it is to be considered, also, that the deceased was a lad, eleven and a half years old, to whom greater indulgence should be extended than to an adult. He was of that age, that he was quite fit to be trusted with the care of his own person in the streets of a country village, and yet it is not probable that he would exercise as much prudence and caution as would an adult. If an aged or infirm person had been found upon the crossing of this street, when the "Jones" was started westerly, in such a position that he could have been seen by the engineer or fireman, it would have been the engineer's duty to have stayed the engine, so that the disabled person could make his escape. It would have been his duty, if practicable, to have ascertained that he was thus disabled, and to have allowed more time for his passage than would have been allowed to one less unfortunate. The old, the lame and the infirm are entitled to the use of the streets, and more care must be exercised toward them by engineers than toward those who have better powers of motion. The young are entitled to the same rights, and cannot be required to exercise as great foresight and vigilance as those of maturer years. More care toward them is required than toward others. In the case of a child but two or three years of age, no knowledge or foresight could be expected. This an engineer is bound to know, and if the child is within his view, to act accordingly. In a case like the present, that of a boy eleven and a half years of age, the jury were not bound to require the same demureness and caution as in the case of an older person.

The general questions of the negligence of the defendants and the contributory negligence of the plaintiff, have been so frequently and recently before this court, that it is not necessary to discuss the cases. They concur in principle with the English authorities cited. I refer to some of them: *Brown* v. *N. Y. Central R. R.* (34 N. Y. 404); *Beisiegel* v. *N. Y. Central R. R. Co.* (id. 622); *Ernst* v. *The Hudson R. R. R. Co.* (35 id.); *Sheridan* v. *Brooklyn City R. R. Co.* (36 id. 39); *McIntyre* v. *N. Y. Central R. R. Co.* (37 id. 287); *Davenport* v. *Ruckman* (id. 568).

The defendants insist, that there was no proof of the pecuniary value of the boy's life, and that nominal damages only should have been given. The boy was engaged in actual service when he met his death, to wit, upon an errand with a pail for his mother, and to procure beer for his father. I am quite clear, however, both upon principle and upon authority, that a jury would have the right, acting upon their knowledge and without proof, to say, that the services of a boy from eleven until twenty-one years of age, were valuable to his father, and to estimate their value. (*McMahon* v. *The Mayor,* 33 N. Y. 642; *Sheridan* v. *Brooklyn City R. R Co.,* 36 id. 39; *Drew* v. *Sixth Av. R. R. Co.,* 26 id. 44; *Quin* v. *Moore,* 15 id. 432; *McIntyre* v. *N. Y. Central R. R. Co.,* 37 id. 287.)

The judgment should be affirmed with costs.

Judgment affirmed.