DANIEL WARNER, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

In an action against a railroad company, to recover damages for an injury occasioned by a collision at a crossing, evidence of the intoxication of the flagman there stationed, on previous occasions, is immaterial, the issue being confined to the question of negligence at the time of the collision.

It is error to instruct the jury that citizens and railroad corporations have the same and equal rights, as to the use of the highway at a crossing. The company has the preference, and it is the duty of the citizen to wait until its train has passed.

A charge which conveys an opinion to the jury that high rate of speed at a crossing is a fault, which renders the railroad company liable for an injury occurring at such place, is erroneous. The law places no restriction upon the rate of speed at crossings, nor does it subject the company

to damages accruing from the speed of trains, if the signals required by law are given. Negligence cannot be inferred from speed alone.

It is also error to charge the jury that the plaintiff will be presumed free from fault, if nothing else appears in the case. Proof, in some form, that the plaintiff did not contribute to the injury by any negligence of his own, constitutes a part of his case. This must appear, either from the circumstances, or from evidence directly establishing the fact.

(Argued January 13th; decided May 6th, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the seventh district, affirming a judgment entered upon a verdict in favor of the plaintiff.

This action was commenced in May, 1864, to recover damages for an injury sustained by the plaintiff in November, 1863, from an alleged collision of the cars of the defendant with the plaintiff's carriage. The plaintiff and his son were driving in a single wagon, on a highway approaching the city of Rochester from the west. The highway crossed the railroad about two miles west of the city, and in passing over the railroad crossing at that point, the plaintiff alleges that his carriage was struck by the cars, overturned and himself severely injured. Exceptions were taken to the admission of evidence and to the charge of the judge. The facts upon which they arose and the exceptions themselves are sufficiently stated in the opinion of the court. The jury rendered a verdict of $5,000 for the plaintiff, which was affirmed by the General Term of the seventh district. The defendant appealed to the Court of Appeals.

The case below is reported, 45 Barbour, 299.

*A. P. Laning,* for the appellant, as to the admission of evidence of the flagman's habits, cited *Robinson* v. *F. and W. R. R. Co.* (7 Gray, 92); *Galehan* v. *B. and L. R. R. Co.* (1 Allen, 189). That it was error to charge that there was a presumption that the plaintiff was free from fault, he cited *Holbrook* v. *N. and S. R. R. Co.* (2 Kern., 236); *Curtiss* v. *Syr. R. R. Co.* (18 N. Y., 534); *Wild* v. *Hud. R. R. R. Co.* (24 N. Y., 430). That there was error in the charge as to

the right to the highway, he cited *Rood* v. *N. Y. C. R. R.
Co.* (18 Barb., 81); *Coy* v. *N. and S. R. R. Co.* (23 Barb.,
643); *Howland* v. *Vincent* (10 Barb., 371); *Clark* v. *Foote*
(8 John., 421); *Radcliff* v. *Mayor* (4 Comst., 195); *First
Baptist Church* v. *N. and S. R. R. Co.* (318). That there
was no duty imposed upon defendant, except to give the sig-
nals required by the statute, he cited *Beisiegel* v. *N. Y. C.
R. R. Co.* (40 N. Y., 9); *Swartz* v. *Hud. R. R. R. Co.* (4
Robt., 247); *Ernst* v. *Same* (39 N. Y., 61); *Haven* v. *Erie
R. R. Co.* (41 N. Y., 296); *Baxter* v. *Troy and Bos. R. R.
Co.* (41 N. Y., 502).

*J. H. Martindale,* for the respondent.

LEONARD, C. The judge, in the course of his charge,
made the following observations, viz.: " The defend-
ants have a right to construct a railroad to run through the
country and to cross all highways that intervene along the
course of their track; they have nothing more than a right
to cross the highways; they *do not own them,* they *belong to
the public.* Every man has a common right with all others to
pass along the highway, and the *railroad has no more right
in crossing the highway than a person has* in passing along
the highway. In crossing the highways, the railroad has the
same rights that citizens have in crossing two roads that cross
each other at right angles. They are bound to exercise care
and prudence in crossing, and *neither has superior rights.*"

The defendant's counsel asked the court to charge, that the
railroad has the right to cross the highways at such speed as
it deems proper, so far as the public are concerned, and that
there is no negligence to be inferred from the rate of speed
at which the trains are run across the country. The court
charged, that they may run at such rate of speed as they think
proper, subject to liability to respond for damages they may
cause, when not restrained by municipal laws. Ordinarily
they are governed as to speed only by the consideration of
prudence.

The defendant's counsel said : It is not a fact that bears on the question of negligence, and negligence is not imputable from it.

The court then charged : They unquestionably have a right to run at such rate of speed as they please, outside the city limits and when no municipal law interferes, but if they do damage by their extreme speed, they are subject to respond for it.   They are bound to exercise such care and prudence as will guard against injury to persons on the highway.   The defendant's counsel excepted to the refusal to charge as requested, and to the charge as given.

The defendant's counsel then requested the court to charge his proposition in a more simple form, that the railroad had a right to cross the highways at such rate of speed as they chose, of which the public are bound to take notice.

The court charged as requested, subject to the same qualification, and added : no doubt the public must take notice of the right of the railroad company to run trains at a high rate of speed.

It is difficult to say what idea was finally left upon the minds of the jury, from the observations of the court, taking together the charge and the responses to the requests made by the defendant's counsel.

The charge conveyed the opinion, that a high rate of speed at the crossings was a fault of the railroad, which would subject them to responsibility for such damages as they should occasion to the citizen who might be injured at the crossing. The court, in responding to the request of counsel, conceded the right to run at such a rate of speed as the railroad thought proper, when not restrained by municipal law, and again added, if they do damage by their extreme speed, they must respond for it.   And on the renewal of the request, repeated the same instructions with the like qualifications.   The instructions requested were exceedingly important to the defendant's case.

The evidence was conflicting as to the ringing of the bell and the blowing of the steam whistle, as the train approached

the crossing.   These were acts of prudence required by law to be observed, and more than usually necessary when the train was run at a high rate of speed.   The statute prescribes that a sign shall be posted at the crossings, calling attention to the fact that it is a railroad crossing, and that the bell shall be rung for a certain distance before the train reaches it. The defendants were alleged to be negligent, as to the precaution of ringing the bell as required by law.   The rate of speed increased the danger and the negligence, in case any precaution was omitted.

If the whistle was blown and the bell rung, the engineer in charge might reasonably assume that the plaintiff, who was in sight, approaching the crossing on the public highway, on a line diverging from the rail track but a few yards for a distance of several hundred feet, would be notified of the danger and stop in season to avoid it.   There was no want of humanity or care, on the part of the engineer, in continuing the high rate of speed at which the train was running, after he saw the plaintiff on the highway, if he gave the proper signals.   The law places no restrictions upon the rate of speed at which the trains may be run across the country, at the crossings of the highways or elsewhere; nor is the train required to stop or reduce the speed at such places.   Nor does the law subject the railroad company to liability for damages occurring from the rate of speed, if the signals required by law are observed.   It is true that municipal corporations may regulate the rate of speed within their corporate limits; but that fact had no relation to this case, as the accident appears to have occurred at some distance from any city.   The qualification suggested by the judge was inappropriate to the occasion.   It has been held in numerous cases that the traveler must look out for the trains at the crossings, before driving on to the rail track; and if one is seen to be approaching, it is his duty to wait until it has passed.   (*Ernst* v. *The Hudson R. R. R. Co.*, 39 N. Y., 66; *Wilds* v. *the same Co.*, 24 N. Y., 430.)

The citizen must yield the right of way at the crossings. The traveler, who should drive his carriage on to the track

when he saw the approach of a train, would bring the injury on himself, if a collision occurred, and would have no just claim for the recovery of damages. A train of cars running at a high rate of speed, as it appears was done in this instance, cannot be stopped until it runs several hundred feet after the signal to stop has been given. It would be impracticable to require them to stop when the citizen intending to pass was nearer to the crossing than the train, or for any other reason. The object of the signals is to notify the traveler, so that he can look out for his safety, and allow the train to pass the crossing before he exposes himself to danger by a possible collision. If the traveler prefers to pass the crossing when the train is approaching, he does it at his own risk, and it is not true that the railroad company is subject to the damages which may be occasioned, by the rate of speed, or by refusing to stop and yield the right of way to the private citizen, where the company have carefully observed the requirements of the law as to signals.

The instructions asked for were correct in principle, and the defendant was entitled to have the law so declared.

The qualification, as to the liability of the company for damages occasioned by the rate of speed at which they ran their trains, was incorrect, and the reference to city limits and municipal law was inappropriate. The idea, or principle of law, as presented by the request of counsel, was changed and confused by the qualifications of the court. It is impossible to determine that no injury was occasioned by the refusal to give the instructions demanded, without any qualification. The conduct of the defendant, as presented by the charge, was high-handed and lawless. It improperly carried the suggestion that the company claimed to own the highway at the crossing, and that the public, and the plaintiff, had been illegally deprived of the enjoyment of the rights secured by law.

I am satisfied that an error was committed in this respect, and that the exception was well taken.

The judge also instructed the jury, that the plaintiff will be presumed to be free from fault, if nothing else appears in the

case, because it cannot be supposed that a man would bring an injury upon himself. There is no presumption of negligence against either party. It is the duty of the plaintiff to prove, and the right of the defendant, who is charged with negligence causing an injury, that he should prove, by satisfactory evidence, that he did not contribute to the injury by any negligence on his own part. This proof, in some form, constitutes a part of the plaintiff's case. It must appear, either from the circumstances of the case, or from evidence directly establishing the fact, to the satisfaction of the court and jury, that the plaintiff is free from any fault contributing to the injury.

It may be assumed that the plaintiff, or the party injured, is anxious for his own safety; but it cannot be presumed that the plaintiff is free from fault, if nothing else appears in the case, for the reason that some evidence is required to overcome such presumption, and the plaintiff would be thereby relieved from proving, either by direct evidence or the surrounding circumstances, that he is not in any fault. (*Johnson* v. *The H. R. R. R. Co.*, 20 N. Y., 65; *Holbrook* v. *The Utica and S. R. R. Co.*, 12 id., 236; *Curtis* v. *Syracuse R. R. Co.*, 18 id., 534; *Wild* v. *H. R. R. R. Co.*, 24 id., 430.)

The circumstances may show, without other evidence, that there was no contributing negligence on the part of the injured party; but that is not a mere presumption.

The evidence was conflicting, in this case, as to the exercise of proper care on the part of the plaintiff, arising in part from the circumstances under which the accident occurred, as well as from the direct testimony of witnesses. The instruction was wholly without warrant or application to the facts of this case, and was duly excepted to by the counsel for the defendant.

The court admitted evidence on the part of the plaintiff, proving that the flagman employed by the defendant, at this crossing where the accident occurred, had been intoxicated on several occasions previous to the happening of this injury, and that his intemperate habits were known to the officers of the

railroad company. In my opinion this was an error, tending to inflame and mislead the jury.

The flagman was proven to have omitted to give the usual signal when a train was approaching, and to have been intoxicated when he ought to have performed that duty on this occasion. The facts necessary to determine the question of negligence, arising from the conduct of the flagman at the time when this accident occurred, were before the jury. Had he exhibited the customary signal, no negligence could have been predicated upon his intoxication. His previous habits of intemperance had nothing to do with the case. If the signal was omitted, the negligence was the same, whether the flagman was drunk or sober. His neglect on a former occasion, or his former intemperate habits, would not be sufficient to create negligence, or be any evidence of it, when this accident happened.

The evidence objected to tended, like the suggestion that the railroad company did not own the highway, to create a prejudice in the mind of the jury, and invite punitive damages, not directly arising from the occurrence.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

HUNT, C. (dissenting.) No motion for a nonsuit was made, either at the close of the plaintiff's testimony, or when the evidence on both sides was completed. No request was made to direct a verdict for the defendant. No suggestion was made at the trial, in any form, that there was not evidence on the part of the plaintiff, which, if credited by the jury, entitled him to a recovery. We are relieved, therefore, from a consideration of the case generally, and need only look at such parts of it as are connected with the exceptions made.

The court submitted to the jury the three questions following, viz. :

1st. Did the injury result from the collision of the train, by the negligent act of the defendant ?

2d. Did the injury result from the fright of the plaintiff's horse, by the negligent act of the defendant?

3d. Did it result from both of these causes combined? The jury answered each of these questions in the affirmative.

The appellant argues that there is no proof that the horse was frightened, and, therefore, nothing to sustain that part of the verdict. The verdict, it says, cannot be sustained, unless both of the facts upon which it was found are sustained by the evidence. It insists, also, that there is no evidence of a collision, but that the contrary is clearly proved. If there was no fright which caused the running away, and the overturn, and no collision, it is difficult to account for the overturn and destruction of the carriage and harness, and the injury to the plaintiff. A voluntary act of the plaintiff, and an intentional injury to his person, are the only remaining alternative.

It was assumed on the trial, and properly, that if the plaintiff's evidence was credited, a case was established. The plaintiff swore that in approaching the crossing, at a slow gait, he stopped three several times, looked for the cars and listened for the whistle or bell, the last time being within a short distance of the track, and that he saw and heard no train approaching. He thereupon proceeded slowly upon the track. As his horse placed his foot upon the rail, and when too late to return, he discovered the cars upon them. He shouted to the horse, which sprang forward and cleared himself and the body of the carriage. The cars, however, struck the hind wheel, upsetting the carriage and throwing it to a great distance. The plaintiff's son, who was with him, testified to the same state of facts, and that he himself looked back and listened, and could see nothing and hear nothing of the cars. He also testified that the cars struck the wheel of the carriage, and that the disaster arose from that cause. On each of the questions thus raised the jury found for the plaintiff. When they found that the injury arose from a collision, the finding of an additional cause was superfluous, but not injurious. A fright of the horse is not inconsistent with a collision, and the injury might well have resulted from a combi-

nation of these causes. That this evidence, if credited, justified a verdict, was conceded on the trial, and has in substance been held many times in this court. I see no occasion for disturbing the verdict from anything occurring in this view of the case. (*O'Mara* v. *Hud. R. R. R. Co.*, 38 N. Y., 445.) When the jury have found, in answer to a specific inquiry, that there was a collision, which finding is based upon the evidence of the witnesses, it is quite useless to insist that there was no collision and to argue legal propositions based upon that allegation.

The court is said to have erred, secondly, in admitting evidence of the habits and condition of the flagman, prior to the time of the accident. It is settled by repeated adjudications of the Court of Appeals, that the fact that the company for a series of years had kept a flagman at a crossing, to warn travelers of an approaching train, that the person injured has been aware of such practice, and that on a particular occasion no flagman appeared, was competent evidence on the question of the plaintiff's freedom from negligence. The plaintiff in this case, was a frequent traveler of this road. When a train was at hand he was, no doubt, warned by words or by signals from the flagman to wait till it had passed. When there was no train at hand no flagman appeared. On the evening in question, as he passed to the west, no flagman gave him warning; no warning was needed, for no train was at hand, and he passed on in safety. On his return no flagman appeared, and he had a right to regard this as evidence that no train was at hand. (*Ernst* v. *Hudson R. R. R. Co.*, 39 N. Y., 68.)

The plaintiff had a right to prove the absence of the flagman, or his incapacity to perform his duty and its consequent neglect. He proved that, although there at the station, he was drunk and did not appear till after the occurrence of the accident. The case still rested with the plaintiff, and he was at liberty to guard his proof, or even to anticipate its refutation. On the point of whether he did then and there discharge his duty by giving the required warning, his actual condition, his mode of life, and his habits of intemperance, afforded

very strong evidence. (*Pa. R. R.* v. *Butler*, 57 Pa. R., 335.)
The appellant's counsel says: It is undisputed that he was
not present, and, therefore, his condition on former occasions,
or his general condition, was not competent to charge the
defendant. If it had been conceded at the trial that he did
not actually come out of the house until after the accident,
this evidence would have been unimportant. The defendant,
however, did not then concede this. Two of its witnesses,
on the contrary, the engineer and fireman, testify that the
flagman came out of the house when the whistle was blown,
and before the plaintiff crossed the track. So, if it had been
conceded that the flagman was drunk, the evidence would not
have been proper. At this stage of the case no such admis-
sion was made. As evidence bearing upon the point of his
presence, or of the company's knowledge of his unfitness,
proof that he was habitually drunk while on duty, and that
his habits were bad, was competent. His habitual intemper-
ance, or even his reputation in that respect, was evidence that
the company was aware of his unfitness for the important
position in which he was placed. (*Gilman* v. *Eastern R. R.
Co.*, 13 Allen, 433, 444; *The same* v. *The same*, 10 Allen, 233.)

The third objection is, that the court erred in charging that
the presumption will be, in all cases, that the plaintiff is free
from fault. The charge was this: " The presumption will be,
in all cases, that the plaintiff is free from fault, if nothing else
appears in the case, because it cannot be supposed that a man
would hardly (intentionally ?) bring an injury upon himself.
That, however, is a matter of evidence; and in all cases of this
class there is a sort of double trial, unless there is at once a
clear case of the defendant's wrong doing and freedom from
fault on the part of the plaintiff." Subsequently the judge
added: " It will be necessary that Mr. Warner shall have
satisfied you that, so far as he was concerned, he was not
guilty of negligence." At the request of the defendant's
counsel, the judge afterward charged in these words: " The
defendant's counsel requested the court to charge that negli-
gence is an affirmative fact, to be proved by the plaintiff before

he can recover, and of necessity he must prove that it was negligence on the defendant's part, free from negligence on the part of the plaintiff." This was an instruction that the plaintiff must prove himself free from negligence, and ended all questions of presumption.

Error is also alleged in that part of the charge where the judge said : " The defendants have a right to construct a railroad to run through the country and to cross all highways; they have nothing more than a right to cross the highways. They do not own them; they belong to the public. Every man has a common right with all others to pass along the highway, and the railway has no more right in crossing the highway than a person has in passing along the highway. * * The railroad has no superior right to the strip of ground across the highway, and must exercise care and diligence, as much as a citizen in crossing the same highway." Not assenting to this doctrine, the defendant's counsel asked the court to charge " that the rights of the citizen are subservient to those of the company," which was refused. I do not understand the point to be here presented, that a traveler has a right to stand on or pass over a railroad crossing when a train is appoaching and in his view. The learned judge had frequently, in this and other cases, held to the contrary. It was a question of the ownership of the highway simply, and had no proper bearing on the question in dispute. The court had already charged, with great distinctness, that the plaintiff could not recover, unless he proved that the defendant was guilty of negligence, and that he was free from negligence on his own part. Assuming this, the question whether the rights of the parties to the highway are equal, or the one subservient to the other, is idle and unpractical. It is a useless discussion. If the jury should hold that the railroad had the superior right, the result must be the same as if they held that the rights of the parties were equal. It is a question of negligence or no negligence, not of dominant or servient rights. The charge in this respect is of no possible importance on the question before us.

The defendant's counsel also asked the court to charge, that the railroad has a right to cross the highway at such speed as it may deem proper, so far as the public is concerned, and that no negligence is to be inferred from the rate of speed at which the trains are run. The court charged, "that they may run at such speed as they think proper, subject to liability to respond for damages they may cause. Ordinarily they are governed as to speed only by considerations of prudence. They are bound to exercise such care and prudence as will guard against injury to persons on the highway." While I agree with the opinion of the learned judge who delivered the charge (*Ernst* v. *H. R. R. Co.*, *supra*), I fail to see its importance in the present case. The cars were running at a speed not less than thirty miles per hour, and not more than forty, and through the open country. These are the limits as given by the witnesses. It was not pretended that there was unreasonable speed, and no point could be made to that effect by the plaintiff upon the evidence. If the defendant gave the signals required by the statute, there was no claim that the rate of speed would render it guilty of negligence. The speed was only important upon the question of the plaintiff's freedom from negligence; that is, whether he could have made the examinations he said he did, when the cars were in fact so close upon him. As a principal proposition, the rate of speed or the right to speed did not exist in the case.

The last point made by the defendant, is that the court refused to charge, "that unless the injury was caused by collision, the plaintiff cannot recover." This objection has been considered under another point, as has also the effect of the previous existence of a flagman at this point. There is nothing in them requiring further consideration.

The judgment should be affirmed, with costs.

For affirmance, HUNT, C.; for reversal, LOTT, Ch. C., LEONARD, GRAY and EARL, CC.

Judgment reversed and new trial ordered costs to abide the event.