## NEW YORK SUPERIOR COURT.

ELIZABETH GONZALES, administratrix, &c., agt. THE NEW YORK & HARLEM RAILROAD COMPANY.

*Contributory negligence, causing death — when defendant, in action for damages, entitled to a verdict.*

Gonzales, the deceased, resided at West Mount Vernon, N. Y., on the west side of the New York & Harlem Railroad track. He took passage on said railroad cars at New York, for his home, and arrived there in the afternoon of the same day. The train, in which he took passage, going north, runs on the easterly track of the road; there are other tracks laying west of it. Gonzales, as the train stopped, instead of getting out on the east side and avoiding any other track, chose to get out on the west side, and, before getting across the track, was hit by a down express train, going at full speed and making a great noise, and killed.

The evidence disclosed that Gonzales' vision was imperfect, but that he could see from ninety to one hundred feet; his hearing, however, was perfect. A witness testified that he stood on the platform of a smoking car next to the one at which Gonzales got out, and, as the latter was stepping down, the witness remarked that that was a dangerous place to get off.

Assuming, as the court did, that there was negligence on the part of the defendant, the negligence of the deceased was so palpable that the defendant was entitled to the direction of a verdict.

*At Trial Term*, 1875.

THIS action, coming on in its regular order to be tried before Mr. justice FREEDMAN and a jury, after having been tried three times before, defendant's counsel, at the close of the testimony on both sides, moved for the direction of a verdict in favor of the defendant.

Gonzales agt. N. Y. & Harlem Railroad Company.

The ,motion was granted, and the following opinion rendered:

*Chauncey Shaffer*, for plaintiff.

*Beach & Brown*, for defendant.

FREEDMAN, *J.*—The action being for negligence the law is well settled that the plaintiff, in order to recover, must show affirmatively that the injuries complained of were the result of defendant's negligence exclusive of any other primary cause. If the deceased was guilty of negligence which contributed, no matter in how slight a degree, the injury cannot be said to have been caused by defendant's negligence exclusively. The law will not proportion the negligence of two parties between them.

The plaintiff, therefore, was bound to prove not only defendant's negligence, but also that Gonzales was entirely free from negligence on his part which contributed to his death.

Has she done it? Has she given sufficient proof to entitle her case to be submitted to the jury? On the question of defendant's negligence I shall assume that she has. But has she on the question of her husband's alleged contributory negligence? That the getting off of Gonzales on the west side of the train contributed to his death, is too clear for argument. But was it negligence? This question must be determined wholly irrespective of the question relating to defendant's negligence.

I admit that the doctrine of contributory negligence has given rise to a great deal of discussion, and that the authorities seem conflicting; but in point of fact they are not — at least not in this state. Negligence, and consequently contributory negligence, must necessarily be relative as to time, place, person, and surrounding circumstances. When this is kept in mind, and each of the authorities is studied in the light of the peculiar facts upon which it is based,

no difficulty is encountered in reconciling the decisions of this state.

Contributory negligence is undoubtedly a question of fact, and whenever it is to be determined upon conflicting evidence, or upon a state of facts which, though undisputed, is not conclusive for the reason that fair-minded men may well differ as to the inferences to be properly drawn therefrom, it must be submitted to the jury and determined by them.

But when the evidence is not only undisputed as to a certain state of facts, but clear and convincing and admitting of but one conclusion, it is not only the right, but the duty of the court to say, on a motion for a nonsuit or for the direction of a verdict, that, as a matter of law, the fact involved therein, viz., the existence of contributory negligence, has been sufficiently proven.

This rule applies to every question of fact on the trial of a civil cause. It has always been the rule, it is the rule now, and in all probability it will remain the rule in civil cases. The difficulty never has been, and never will be, in the rule, but in the application.

This being so, the rule applies with peculiar force to the question of contributory negligence. For before the case can go to the jury, it must appear affirmatively, as part of plaintiff's case, that he did not contribute by his own fault.

There must be tangible proof upon this point, or at least the attending circumstances must be such as to show it. A bare presumption is not sufficient. This has been expressly held in *Button* agt. *Hudson R. R. R. Co.* (18 *N. Y.*, 248); *Squire* agt. *Central Park, N. & E. R. R. R. Co.* (4 *Jones & Sp.*, 436); *Warren* agt. *N. Y. Central R. R. Co.* (44 *N. Y.*, 465).

And that it is the duty of the court either to nonsuit a plaintiff or to direct a verdict against him, whenever his proof upon this point does not come up to the required standard, has again been expressly laid down by the court of appeals

since the case at bar was before that court for the second time. The following three cases selected from a number will show this:

In *Harty, Administratrix, &c.,* agt. *The Central R. R. Co. of New Jersey* (42 *N. Y.*, 468), the verdict was sought to be upheld on the ground that the failure of the company to give the signals which the law requires to be given for the protection of travelers upon highway, was negligence *per se.* But the general term set aside the verdict, and on affirming this decision and rendering judgment absolute against the plaintiff, EARL, Ch. C., said: "I also reach the conclusion, that the intestate was guilty of negligence contributing to the accident. \* \* \* There was nothing to obstruct his view. All he had to do before he passed upon the north track was to look, and the neglect of this ordinary precaution cost him his life. It was not necessary for him to go upon the north track to avoid collision with the eastward bound train. He could have gone between the tracks. Instead of doing this, he needlessly and thoughtlessly went upon the north track with his back toward the coming train. When he was upon the railroad track, he knew he was in a place of danger and that he might be killed; and hence it was his duty to use his eyes and ears, and to take at least ordinary precaution to save his life. Not having done this, I believe it is now well settled that no damages can be recovered on account of his death." Mr. justice FOSTER who had delivered the opinion of the court on the second appeal in the Gonzales case, concurred in this opinion of EARL, Ch. C.

In *Gorton* agt. *The Erie Railroad Co.* (45 *N. Y.*, 660), the plaintiff had a verdict at the circuit and the general term upheld it. But the court of appeals reversed the judgment, and in doing so, ALLEN, J., said (*p.* 664): The doctrine has been declared by this court, and reaffirmed, that a traveler approaching a railroad track is bound to use his eyes and ears so far as there is an opportunity, and when, by the use of those senses, danger may be avoided, notwithstanding the

VOL. L    17

neglect of the railroad servants to give signals, the omission of the plaintiff to use his senses and avoid the danger is concurring negligence, entitling the defendant to a nonsuit."

The next case, *Phillips* agt. *The Rensselaer and Saratoga R. R. Co.* (49 *N. Y.*, 177), was a case in which the relation of carrier and passenger existed. At the circuit the plaintiff was nonsuited. The general term set aside the nonsuit and ordered a new trial. The court of appeals reversed the order of the general term and affirmed the nonsuit on the express and sole ground that, under the evidence, the plaintiff was guilty of contributory negligence in attempting to get on board of the train.

The plaintiff contends, however, that in the case at bar the court of appeals has settled the question by deciding that the case should be submitted to the jury. But the general term of this court has since held that such result does not necessarily follow. A brief reference to the history of the case is therefore proper.

On the first trial evidence was given on both sides. The plaintiff had a verdict and the general term sustained it. The court of appeals reversed the judgment, and ordered a new trial on the ground that the evidence, as it then stood, showed that Gonzales was guilty of contributory negligence, and that for that reason the plaintiff should have been nonsuited (38 *N. Y.*, 440).

On the second trial it may be said that no evidence was given on the part of the defense, and that plaintiff was nonsuited on her own showing. The state of the proof, as far as it went, was not the same as on the first trial, the plaintiff having, among other things, supplied evidence that her husband's eyesight was defective. Under these circumstances the court of appeals held that the nonsuit was improper (39 *How. Pr.*, 407).

On the third trial evidence was again given on both sides and plaintiff had a verdict. This was set aside by the general term of this court on the ground, that from the whole of

such evidence it again appeared, affirmatively, that Gonzales was guilty of contributory negligence (1 *Jones & Sp.*, 57). In rendering this decision the court was unanimously of the opinion that the court of appeals did not by its decision on the second appeal, which was taken by the plaintiff, overrule its previous decision on the first appeal, which was taken by the defendant. After a review of the points of difference between the proof given on the second trial and that given on the third trial, it was therefore said by JONES, J., who delivered the opinion of the court :

" The down express train made a great noise. Several witnesses testified they heard it coming.  *  *  *  There is no pretense that the hearing of the deceased was defective. If his eyesight was so defective as that he could not have seen the express train at a sufficient distance for him to judge whether it was prudent for him to get off, still that did not absolve him from making a reasonable use of his organs of hearing to ascertain whether a train was coming. The fact of such impaired vision, so far from absolving him from using his organs of hearing, would seem to impose upon him the necessity of a more than ordinary, diligent and attentive use of them. The evidence shows that, by the reasonable and ordinary use of his organs of hearing, he could have ascertained the approach of the train, and would have been warned not to leave the cars on which he was a passenger until, by the use of his eyesight (which was not too defective for that purpose), he could satisfy himself that the track was clear for him to cross in safety. It seems that, upon the facts and the evidence now in the case, the decision of the court of last resort, on the first appeal, is conclusive against plaintiff's right of recovery."

On plaintiff's appeal to the court of appeals from this decision her appeal was dismissed, and the consequence is that this decision constitutes the law which must be applied to this, the fourth, trial. It is my duty so to apply it, and the only remaining question therefore is, whether the plaintiff,

on this trial, has supplied by evidence the defect in her former proof.

On a careful examination of the testimony I am satisfied that, on the question of contributory negligence, plaintiff's proof is substantially the same as that adduced on the trial immediately preceding, and that she has failed to supply the defect.

It again appears that Gonzales' vision was impaired, but it was also shown that he could see from ninety to 100 feet. It again appears that the express train made a great noise, and this fact is wholly undisputed. Plaintiff herself swears that when from her house she perceived her husband on the train she turned round to the stove to fix his dinner, and that while so engaged she noticed that the express train shook the house. George Riley, one of plaintiff's witnesses, testified that he was on board of the train with Gonzales; that he heard the noise of some other train coming and that it struck him as dangerous for Gonzales to get off on the west side. He added, that whenever he sees people get off on that side he is afraid something might occur. Mrs. Mary Drew, another of plaintiff's witnesses, testified that she sat at one of the windows of her house and that she heard the express train come when it was 400 feet from the house. Other witnesses testified that they heard the noise of the approaching express train; and on the part of the defense it was shown that on a still day, such as the day in question was, the noise of an express train, going at the rate of speed at which plaintiff claims this train passed, can be heard for about a mile. It also appears conclusively that at the time Gonzales stepped off, the train from which he alighted either made very little noise or had ceased to make any. And lastly comes Zeno Hoyt, the constable, who testified that he was standing on the lower step of the hind platform of the smoking car when Gonzales came out of the next car; that he, Hoyt, heard the noise of the approaching express train and of the rolling of the cars, and that such noise stopped him from getting off;

that he said to Gonzales that it was a dangerous place to get off, but that Gonzales, nevertheless, got off.

From this mass of uncontradicted testimony it affirmatively appears that by the reasonable and ordinary use of his organs of hearing, at least, Gonzales could have been warned of the approaching danger. If he omitted to make such use, it was negligence. If he did use them, he must have heard the approach of the express train; and having heard it, it was negligence on his part to get off and step forward in the manner he did. The mere fact that he was a passenger did not relieve him from the exercise of ordinary care. He not only got off, but also stepped forward upon the adjoining track. There is no pretense that his hearing was defective. On the contrary, his stepson, Otto Siebold, who is the only witness that made any allusion whatever to Gonzales' hearing, testified that he had never heard of its being bad.

The case therefore falls within the rule laid down by the general term of the court on the last appeal, and the defendant is entitled to the direction of a verdict.