O’Gorman, J.—[Dissenting].
—The action was brought to recover damages for injuries claimed to have been inflicted on the plaintiff by reason of the negligence of the defendants. At the close of the plaintiff’s case, a motion was made by the defendants’ counsel for dismissal of the complaint, and the motion was granted on the ground of contributory negligence on the part of the plaintiff.
The question now to be discussed, is whether, on the evidence, the learned trial judge was bound to decide as a matter of law that the plaintiff had been guilty of negligence which contributed to the accident and was the proximate cause thereof, or whether he would have been justified in submitting the question as matter of fact to the jury for their determination. In considering this subject, an appellate court is bound to give to the testimony the interpretation and effect most favorable to the plaintiff, to concede to the plaintiff all presumptions and inferences most favorable to the plaintiff, to reconcile contradictions if they can be reconciled, or to select from the conflict of testimony such evidence as may be most favorable to the plaintiff, and to give the plaintiff the benefit of every reasonable doubt. The true test perhaps of the propriety of a nonsuit is this: If a jury, regarding the testimony in the light most favorable, had found a verdict for the plaintiff, would an appellate court have been bound to set aside that verdict as against evidence (Stackus v. New York C. & H. R. R. Co., 79 N. Y. 464).
Treating the testimony in this case in the manner above prescribed, the following facts appear: On the morning of September 26, 1876, the plaintiff, a woman sixty-two years of age, was crossing Centre street at its intersection with Chambers street in this city. She had been at a savings *190 bank situated in Chambers street, between, Broadway and Centre street, and on leaving the bank walked along the north side of Chambers street toward the east. When she arrived at the northwest corner of Chambers and Centre street, she stopped to allow a car going south, or down town, to pass by. A second car, also going south, was following the first car at a short interval. The plaintiff started to cross as soon as the first car had passed her, and she had arrived within about one foot from the sidewalk on the east side of Chambers 'street, when she was struck by the horse of one of defendant’s cars going north, knocked down, and her leg was broken. Two by-standers were witnesses of the accident, and from their testimony it can be gathered that the day was a clear, bright day; that when plaintiff started to cross Centre street, the street appeared to be clear ; that the defendants’ car came down toward Chambers street going north at a rapid pace—very fast—the horses on a run; that there is a down grade on Centre street, opposite Chambers street; that cárs usually go fast there; that this car went faster than cars usually go down that hill, and at the spot where plaintiff was struck ; that the driver just before the accident, held the reins loose in his left hand and did not apply the brake until the horses had struck the plaintiff, and she had been knocked down and was lying on the ground. The track on which defendants’ car ran, was the most easterly track,—the nearest to the east sidewalk of Centre street, and was only four or five inches from the curbstone. She was struck by the near horse on the west and left side of the car. He struck her just back of "the collar, and knocked her down. She was then struck by the left wheel of the car, and pushed along about four feet. She was a little north of the north cross-walk when she was struck. She lay, when picked up, near the hind legs of the horse, with the dashboard of the car about up to her, and across the track, with her head towards the north-west. The driver was arrested immediately after the accident, and in answer to a question . from the police officer, he said: “ the horses knocked down *191 an old woman—she must be drunk.” There was no evidence that she was drunk, or at all under the influence of liquor. The car when first seen was, according to a diagram in evidence, about one hundred and twenty-five feet from the spot where plaintiff was knocked down.
The learned counsel for the defendants states in Iris printed argument on this appeal that, “ a car going only six miles an hour, will travel eight and eight hundred-thousandth feet per second.” This is only the ordinary jog which street cars usually travel, and going very fast down hill at a steep down grade, it may be assumed the rate of speed was at least ten or twelve miles an hour, which would carry the car one hundred and twenty-fiye feet in less than seven seconds. If this computation be correct, it gives a fair idea of the speed at which the car was going, immediately before the plaintiff was struck.
The testimony of the plaintiff herself throws no light whatever on the question of the negligence of the defendants. She was manifestly an uneducated, unobservant woman, so terrified and dazed by the suddenness of the accident, as to be able to remember but little about it. All that she knows, is that ‘£ she was run down by the car and mashed.” As she herself testified, she was “vulgar, and did not know the use of words ; she could not give a very good account of herself.”
Upon this evidence, if there had been no other question but that of the negligence of the defendants, the case should surely have been sent to the jury for their determination. But the learned trial judge held, that there was evidence of negligence on the part of the plaintiff which contributed to the accident, and which as matter of law disentitled her to relief. This is the next question to be considered.
The law on that subject, as it may be gathered from the decisions of the court of appeals of this state, seems to be, that the plaintiff in an action of this kind, cannot recover damages from the defendant, if by his own fault, or absence of such ordinary care as a prudent man would take of *192 • himself under the circumstances, his own negligence was the proximate cause of the accident (Massoth v. Del. & H. Canal Co., 64 N. Y. 524).
To justify a nonsuit on the ground of concurring negligence, the negligence must appear so clearly, that no construction' of the evidence or inference drawn from the facts, would have warranted a contrary conclusion, and that a verdict the other way, would have been set aside as against evidence (Kain v. Smith, 89 N. Y. 375). In what respect was the plaintiff here in fault ? In what did her negligence, if any, consist ?
A case decided by the court of appeals, which in some of its features bears a resemblance to the case at bar, is Barker v. Savage (45 N. Y. 191). There the plaintiff, a woman over sixty-four years of .age, lame, and wearing a hood which impaired her power of hearing, was fun over by the defendants’ cart, then moving on a street of this city at the rate of four miles an hour. The driver, when about twelve feet from the plaintiff, shouted to her and pulled in his horse. Plaintiff paid no attention to the shout, continued to advance, and was struck and injured. The trial judge charged that a person crossing the street had the right of way. A driver was bound to take care for him. A person crossing a street, was not bound to look either up or down, but only straight before him ; and the driver was bound to avoid a collision with him. The learned Judge Groyer, delivering the judgment of the majority of the court, held that the charge was erroneous. That although less care is required in crossing streets of cities at the usual crossings, than at-railway crossings, because vehicles traveling thereon move at less speed than railroad trains, and are to a greater extent under the immediate control of those having charge of them ; nevertheless, reasonable care requires in all cases the exercise of vigilance proportioned to the danger encountered. That there was no evidence that the plaintiff had looked at all in either direction for approaching vehicles. That had she looked, she could have seen the horse and cart in time to have avoided them.
*193 The difference between the facts in that case, and in the case at bar will easily be seen. Here, the plaintiff did look, and gave attention to the two cars coming down south. Whether before or when she started to cross the street, she could have seen the car coming north, by which she was struck, if she had looked, is not certain, and was a proper question for the jury (Smedis v. Brooklyn & Rockaway B. R. R., 88 N. Y. 13).
The learned counsel for the defense, in the case at bar, in his printed argument, computes, that if plaintiff were walking at the rate of four miles an hour, a rather fast pace for a woman of her years, she would have crossed to the spot where she was knocked down—thirty feet—in six seconds. She probably walked at a slower pace, but taking it as defendants’ counsel states, the defendants’ car would have traveled from the place' where it was first seen by the witness, to the place where plaintiff was struck—one hundred and twenty-five feet—-also in about- six seconds. Thus, when plaintiff started to cross the street, the car might not have yet arrived within her range of vision, and the street might have seemed to her quite clear toward the south. She might fairly have expected, that no car, traveling at its ordinary rate of speed, could reach the crossing before she had passed over to the sidewalk on the east side of the street. 'And the danger of the car approaching her at a very fast pace—at a run—at the rate of ten or twelve miles an hour, or about double the ordinary speed, was a peril which she had no reason to anticipate, or to provide for. In other words, she may have had good reason to expect that she had twelve seconds to cross, whereas the car coming down at high and unusual speed, struck her within seven seconds of the time she left the sidewalk. She testified that when she first saw the car, if was about eight and a half feet away from her. This eight and a half feet, defendants’ counsel computes, would have been crossed in less than one second, if the car traveled at the rate of six miles an hour. Traveling at ten or twelve miles an hour, the horses must have struck her in the same instant *194 in which she saw them. When the car struck her, and not until then, a shout was raised (Mentz v. 2d Ave. R. R., 2 Rob. 356; aff’d in court of appeals, 3 Abb. App. Dec. 274).
What the plaintiff did or omitted to do in that one i nstant of time,—whether in the shock and terror of that instant a man, younger, more active, more self-possessed, of better judgment than she had, might have even then saved himself by some quick and vigorous action,—is not the question.
That a person in a perilous situation makes a mistake in judgment, where had he remained quiet, he would have escaped injury, does not bar his action (Wasmer v. Delaware, Lack. & Western R. R., 80 N. Y. 212, 218; Cuyler v. Decker, 20 Hun, 173; Coulter v. Am. &c. Co., 56 N. Y. 585; Buell v. N. Y. C. R. R., 31 Id. 314).
That the measure and degree of care, the omission of which constitutes negligence, is to be graduated by the age and capacity of the individual, is expressly decided in Thurber v. Harlem Bridge, M. & F. R. R. (60 N. Y. 326), and the cases there cited. Even thé question, how far the intoxication of a plaintiff and the negligence inferrable from that condition, was a concurrent or contributory cause of the accident was held to be properly submitted to the jury (Milliman v. N. Y. C. & H. R. R. R., 66 N. Y. 642).
The case of Thurber v. R. R. (supra) is, in many respects, in point. There, a boy nine years old, on his way to school, was run over by one of the defendants’ cars while crossing the Boston road in Morrisania. The accident occurred in midday, and the boy was in plain view of the driver of defendants’ car. . The chief question was as to the negligence of the plaintiff. The court said: “It is not enough to authorize a nonsuit, that there is evidence which would have warranted a jury in finding that plaintiff was negligent, and that his negligence contributed to the injury. The question of negligence depends very much on circumstances and is addressed to the judgment of men of ordinary prudence and discretion, and ordinarily for the jury. When the inferences to be drawn from the proof, are not certain and incontrovertible, it cannot be decided as a question of *195 law, by directing a verdict or a nonsuit, but must be submitted to the jury. The circumstances ot' the case,, the positions and conditions of the parties should be considered. The actual result does not necessarily condemn the attempt as rash, or even negligent. Plaintiff was lawfully in the street and crossing it for a proper purpose, and he mistook very slightly as to having time to cross over before the car should reach the point of his crossing. It would have been error to decide as matter of law, that the attempt to cross the street was under the circumstances, '■'■per ae,” negligence.
In the case at bar, it might well have been argued, and the jury might not unreasonably have inferred, that the plaintiff had the right to expect that cars coming toward her from the south would travel at their usual pace, and that no car being, seen by her on that side before she started to cross, she would have had ample time to cross in safety before any car, coming at its ordinary pace, could reach her; and that she was in no degree in fault in making the attempt (Jetter v. N. Y. & H. R. R., 2 Keyes, 154; Buel v. R. R., 31 N. Y. 314).
It should be remembered that she was struck within a few feet of the sidewalk on the east side of Centre street. In a second more she would have completed the crossing, and been wholly out of danger. All these were questions which should have been submitted to the jury.
There is another aspect of this case which deserves notice. The negligence of the plaintiff, even if there had been any, was not the “proximate” cause of the accident.
The plaintiff, while crossing the street, was for a period of six seconds, and while the defendants’ car traversed a space of 125 feet, in full view of the defendants’ driver, if he had been vigilant and looked for any one crossing; and he had ample time to brake up the car and slacken his speed, and avoid striking* the-plaintiff. He did not brake up his car, or slacken his speed until he had struck ¡he plaintiff. She was walking on the ordinary cross-walk. He drove at an unusually fast pace—his horse on the run—the reins loose in his hand—his eye, as far as it appears, not *196 directed toward the plaintiff. There is no evidence that he shouted or in any manner endeavored to attract her attention.
Even if she had been negligent and in fault, it was his negligence or fault, not hers, which was the ‘1 proximate ’ ’ cause of the accident. The jury might have found that she exercised ordinary care, and was not in fault. If the driver of the car did not exercise ordinary care, it was his fault that was the 11 proximate'1'’ and chief cause of the injury ; and if the jury had so found, their verdict could not have been set aside as against evidence. The plaintiff had the right to expect that the driver would slacken his speed when he saw her, and his omission to do so was hot one of the dangers which she was called on to provide against (O’Mara v. H. R. Railroad, 38 N. Y. 445).
Even if there had been negligence on the part of the plaintiff, but the defendant could, in the exercise of ordinary care, have avoided the injury in spite of the negligence of the plaintiff, the failure of defendant to exercise that ordinary care was the “proximate” cause of the accident (Wasmer v. Del. Lack. & W. Railroad, 80 N. Y. 213, 217; Green v. Erie Railroad, 11 Hun, 333).
The theory and intention of the law, is not to punish either the plaintiff or the defendant for negligence ; but to discover which party it was, whose fault, or omission in the performance of duty, was the actual, proximate, and moving cause of the injury ; and to' compel him to compensate the injured party therefor.
In Kenyon v. N. Y. C. & H. R. Railroad (5 Hun, 479), this language is used in the opinion of the court: “ Where an engine driver can, with ordinary care, stop a train so as not to run over a person, the negligence of that person will not prevent a recovery. Neglect on the part of a person in charge of an engine to use ordinary care to avoid injuring a person on the track, is in contemplation of law equivalent to intentional mischief. He has no more right to run over a person, lawfully or unlawfully on the track, than he has to shoot him.”
Such a case furnishes a just and well-established *197 exception to the general rule, that contributory negligence on the part of the plaintiff, will defeat a recovery.
In Healey v. Dry Dock, E. B. & B. Railroad (46 Super. Ct. 473), the relative responsibility of the defendant and of the plaintiff, under somewhat similar circumstances to those of the case at bar, is placed on the surer ground of the negligence of the defendant being the actual, proximate, and moving cause of the injury, and the negligence of the plaintiff being only the remote and accidental cause.
In my judgment, there was enough of evidence in the case at bar on the question of negligence of the defendants, as well as of negligence on the part of the plaintiff, and the relation of each to the cause of the accident, to go to the jury; and the dismissal of the complaint was error.
The judgment should be reversed with costs.