PRISCILLA BROWN, Appellant, *v.* THE NEW YORK CENTRAL
RAILROAD COMPANY, Respondent.

A railroad company, in the construction and running of its road, is bound to
exercise all the care and skill which human prudence and foresight can sug-
gest, so far as regards its passengers.

And this care extends to all measures necessary and proper to secure the safety
of the train and passengers, as well as to the care and management of the
train itself.

Although the statute has imperatively required certain things to be done, such
requirements are not necessarily the full measure of the care, &c., required
on the part of the road, in the discharge of its duties to the public.

It is gross negligence for the servants of the defendant to run over any part of
their road known to be frequented by cattle, at full speed, unless that part
of the track is properly guarded from that invasion: Per PECKHAM, J.

ON the 15th of May, 1859, plaintiff was a passenger on
defendant's express train of cars from Buffalo to Syracuse,
which train ran off the track, about 10 o'clock in the fore-
noon, near Jordan station, in Cayuga county, and injured
plaintiff, for which cause this action is prosecuted.

The cause was tried in 1860, in Onondaga county, before
a court and jury, and the justice ordered a nonsuit on the
ground that there was no evidence of negligence against
defendant, and refused to submit that question to the jury,
to which ruling the plaintiff excepted. The court ordered
the entry of judgment suspended, and the case and excep-
tions to be first heard at a General Term, where a new trial
was denied, and judgment entered for the defendant, where-
from the plaintiff appeals to this court.

Among the facts relied on to prove the defendant liable,
are the following: In constructing the railroad where the
injury occurred, the defendant laid the railroad across a high-
way running north and south, at a point where another
highway came into it from the west, and then used the bed
of said west highway as the track of the railroad, for twenty-
four rods, longitudinally, by raising an embankment over
three feet high on that highway, and moving back the high-

way fences over three rods on each side of the track, and excavated the earth of the west highway north of the track, and making an open space, subject to the intrusion of cattle from these highways, without any fences or cattle guards to protect the track.

The defendant turned the west highway across the railway embankment at a point two chains and seventy-one links west of the north and south highway, and constructed a new highway entirely south of the boundaries of the old highway, from the new crossing thus made to the north and south highway, as shown on the map.   It was proved that the track of defendant's road thus on the old east and west highway, was not and could not easily be traveled upon.

Having thus, as the plaintiff insists, discontinued the old west highway from the new crossing made by them, to where it formerly entered the north and south highway, being a distance of about twelve rods, they omitted to fence the railroad between these two crossings.

At the time of the accident, the defendant had a continuous pile of ties for about four rods between the west crossing and the east crossing, on the north side of the iron rails of the track, and about four or five feet therefrom.   Like piles of wood were on the south side of the track, but not quite so near.   Cattle were in the habit of coming on to the track at this place to feed on the grass there growing.   The railway track is straight and level for the distance of two miles west of the north and south highway.

At 10 o'clock A. M., the express train in which plaintiff was seated came to this point from the west, "running very swift," and struck a cow which stood feeding on the track, or just by it, opposite the piles of ties between the two crossings, threw the cars off the track and injured the plaintiff.   The cow was feeding along the track, her head to the east, and as the cars came up to her from the west, she raised her head and immediately started to cross to the south of the track, but was struck.   Five or six other cattle were near the track at the same time.

The piles of ties on the north side where the cow was hit,

were deranged, and the south ends turned round to the east, and one of the ties thrown off and driven along the ground to the east. The end of this tie was bloody, and a hole was made in the side of the cow.

It was proved that the defendant had kept a watchman at different times at these crossings to drive away cattle, but that at this time he was absent. Afterwards, he came back.

The defendant removed the wood and ties from the road soon after the accident.

The plaintiff offered to prove that previous to this accident, on other occasions, the defendant's cars had run over and killed cattle at the same place where this accident occurred. The defendant objected to this evidence, and the court excluded it, and the plaintiff excepted.

The cow was struck at about the center of the old west highway.

*Charles Andrews*, for the appellant.

*S. T. Fairchild*, for the respondent.

PECKHAM, J. Upon the facts, was there error in nonsuiting the plaintiff and refusing to allow the case to go to the jury?

It is insisted by the plaintiff that that part of the old highway running east and west, which was exclusively occupied by the defendant as its road bed, and whereon this injury occurred, had ceased, by the acts of the defendant, to be a public road, and that defendant was, therefore, guilty of negligence in not having fenced it and put cattle guards at each end, as would have been required by law under such facts.

It appeared by the proof that the east and west road had been entirely changed, in fact, by the defendant; had been moved south of its former track; and was, and had been since, exclusively traveled on its new south track. Its old bed, occupied by defendant for the bed of its road, had been raised three feet and some inches, and the proof showed it had not in fact been traveled on, and could not be, easily. The right

of the defendant to construct its road along said highway was not denied, but the "company shall restore the highway to its former state, or to such state as not unnecessarily to have impaired its former usefulness." (2. R. S., 5th ed., 681, sub. 5 of § 34.) The defendant had dug a ditch in the old road bed on the north of defendant's track, and had otherwise rendered it impassable there.

If the defendant had the right thus to change the old road; if it had the right to give it a new track, to alter or change the road, and to deprive the public of the use of the old track, I incline to think the company is bound to treat the old track thus abandoned as discontinued, and to fence and guard it accordingly. The alteration of a public road by competent authority would seem to imply, in terms, the abandonment of the part left — its discontinuance; otherwise, it should not be called an alteration, but an addition.

In *Commonwealth* v. *Cambridge* (7 Mass., 158), Chief Justice PARSONS says, "that the turning of part of the course of an old road to another direction, is, in law, a discontinuance of that part of the old road, the course of which was turned."

In *Commonwealth* v. *Westborough* (3 Mass., 406), it was held, that an alteration is a discontinuance of the part altered.

It is, perhaps, claimed that this was a widening of the east and west road, and not an alteration; that it was made under the authority of section 27 of the railroad act. (2 R. S., 5th ed., 678.) It is not clear that that provision would make this other than an alteration; still, as the decision is not necessary in the disposition of this case, no opinion in regard to it is expressed.

But of what possible benefit — for what useful purpose to the defendant or to the public, should this piece of ground be regarded as a public highway, when it is not and cannot be so used? Its only consequence is to permit cattle to stray thereon, to the great peril of the defendant's passengers, as well as danger to its property.

The result to the defendant is the same in this case,

whether the old track was discontinued by the alteration or not. If it were discontinued, then the road should have constructed cattle guards at each point on defendant's track of the old road abandoned, where they came in contact with the public road. It should have constructed cattle guards at these road crossings. (2 R. S., 5th ed., 690, § 56.) If this could not be legally done, because of its being a public road in law, though not in fact, then the defendant must see to it that all other practicable measures were adopted to secure the safety of its passengers over so dangerous a point — to keep a watchman, or to go slower there, if necessary. The same degree of care must be exerted by the road for the safety of its passengers there, that is required in reference to its cars and to the materials of which they are constructed. The care and skill there required are well illustrated in this court in *Hagerman* v. *Western Railroad Company* (3 Kern., 9.) A passenger was injured by the breaking of an axletree from an internal defect, which no vigilance or skill could have discovered by an external examination. It was proved that the company purchased the axletree from manufacturers of the first class for skill and care. The court held that the company was liable, if the defect could have been discovered (as it was proved it could), in the course of its manufacture by any process or test known to the skillful in such business.

It is no answer to say that the statute allowed the defendant to run without constructing any fence or cattle guards, or having a watchman to keep off cattle from the road in such case, and if the road comply with the law it cannot be liable.

The statute has imperatively required certain things to be done; but such requirements are by no means the measure of the defendant's care or conduct in the transportation of passengers. These requirements the road must comply with; but it cannot, therefore, neglect other necessary and proper precautions. The defendant here was bound to exercise all the care and skill which human prudence and foresight could suggest. This language is broad and comprehensive, but it is the language of the law. (*Bowen* v. *The New York Central Railroad Company*, 18 N. Y., 408.) This

care extends to all measures necessary and proper to secure the safety of the train and passengers, as well as to the management of the train itself.

The statute makes no provision that the cars of a railroad shall be constructed in any peculiar manner. Yet the courts require them to be manufactured in the safest possible mode.

Not being controlled by statute, the defendant might plausibly say, that if it purchased its axletrees of first class manufacturers, and purchased the best that were made by them, it had discharged its whole duty, and could be charged with no neglect, though injury and damage ensued from a defect in them.

This court has properly held otherwise, that the defendant must see to it that the axletree is not only sound in appearance, but sound in fact, if any skill applied in the course of its manufacture could detect the defect.

The statute authorizes the defendant to cross roads above or below the surface of wagon roads. It simply gives to defendant the power; it does not impose the obligation to do so. The defendant may keep a watchman where it crosses such roads on the same surface; the statute does not require it. The defendant may run slower at such a point; the statute does not direct it. But the defendant must neglect all these precautions at its peril. Either one will give safety to its passengers. If it will neglect and disregard all, it does so at the peril of being answerable for the consequences — for all damages to its passengers caused by such neglect.

A clearer illustration of defendant's duty cannot well be presented than this case affords. It appears that cattle had been in the habit of pasturing upon the track at this point. The cars, on this occasion, were on a straight plain for some two miles directly before they reached this place. It was in the open day; the cow, of course, plainly visible to those upon the engine; yet the train rushes with undiminished speed until the injury occurs. The engineer, of course, saw or might have seen her. The result to the defendant is the same in either case. If her being there was a surprise to

him, he should have seen her in the exertion of that extreme care he was bound to exhibit at such a place, and then the defendant would have been liable, if the accident might have been avoided "by the most skillful and prompt use of all the means in its power."

But he could not say it was a surprise. Cattle, it was proved, had been frequently seen there feeding. A man in defendant's employ had been there at different times engaged in driving them off the track, until a fortnight prior to this injury.

The plaintiff offered to show that other cattle had been killed there by defendant on other occasions. The fact of their having been killed was perhaps not important; but the fact that they had been there — were accustomed to be there — was clearly pertinent. It put the defendant and its officers and agents on their guard. It bade them prepare for such perils. It gave them full notice. If, then, they rushed on with undiminished speed, they were guilty of gross carelessness. It is said the cattle were trespassers, and the road was not bound to expect that such trespasses would be repeated.

But the trespasses *were* repeated, and the defendant's agents and employés knew it. At such an open, inviting place, they should have expected it, too, and used the proper precautions to prevent a collision. Is it any, the slightest excuse that the road is filled with trespassing cattle? Has the engineer a right to rush on to them, because they are trespassers? The peril to the passengers is precisely the same, whether trespassers or otherwise, and their lives he must guard.

It is also urged, that, though the engineer saw this cow, he could not have known, with any certainty, that she would turn upon the track and cause this injury. The defendant's agent knew the position of things at that point. He passed daily. It was as clear as any proposition in Euclid, that this cow would not be quiet while this train ran within a foot of her, with its tremendous force and noise. He knew she could not go through the ties. The only other path lay across the track. But suppose he was entirely uncertain whether she

would go on to the track or not, had he a right to speculate as to the result, at the peril of the lives of his passengers? Clearly not. The result might have been the same, whether the ties had been there or not. The cow might have gone one way, and equally well she might have gone the other; and no right-minded man would have dared to run the chance of her crossing the track and imperiling the lives of his passengers. If he did, it would have been negligence — plain, clear and palpable; and injury following, the defendant would have been liable.

Enough has been said, it seems to me, to show that a proper case was made for the jury, and that the nonsuit was erroneous.

But it is insisted that, if the defendant be held responsible for such accidents, it will be compelled to keep a watchman at road crossings, and that such an expense the defendant could not afford. The plain answer to such a position is, that the law requires of defendant the exercise of the highest care that human prudence and foresight can suggest for the safety of its passengers. If such a measure be necessary, it must be adopted, or defendant must answer the consequences. If this road, running through a rich and populous country, cannot afford to adopt the measures necessary to the safety of its passengers, what road can?

But the rate of fare will not change the rule of law governing the road, either as a carrier of goods or of passengers.

The defendant might run its train very slowly at such points, and thus secure its passengers.

In some States the law requires a train, crossing another track where cars are frequently passing, to come to a stop as it approaches the other track; also to stop as it comes to a bridge where there is a draw. This is the measure of caution which some legislatures have deemed necessary and proper, in such cases, to prevent accidents.

Yet the chances of an accident would plainly be greater, by more than five to one, at a place like this, where cattle are commonly found, than at either of those places.

Again, railroads have the power, by law, to avoid these

perils. They may generally avoid running on the same surface with a public highway as they cross it, and at comparatively trifling expense. They may go above or below the surface, in laying their track.

Less regard in this respect is here paid to the safety of passengers and of the public than in any country in Europe. Is human life of less consequence here? It should not be so regarded. If a change be necessary, it should not be a change in the courts, to relax the rigor of the rule requiring the highest care from the defendant as well as other roads.

If higher rates be necessary to their proper running, let the legislature be less economical in the fare, and more so in the lives of its citizens.

Wherever questions of this nature have arisen in other States, the courts have expressed views similar to the above, as to the rules that should govern railroads. (*Bowen* v. *N. Y. Central R. R. Co.*, 18 N. Y., 408; *Messerno* v. *Nashville R. R.*, 1 Sneed. [Tenn.], 220; *Cornwall* v. *Sullivan R. R.*, 28 N. H., 161; *Streck* v. *Mil. R. R.*, 7 Am. Law Reg., 722; *Sullivan* v. *Philadelphia and Reading R. R.*, 30 Penn., 234.) Most of these are quite analogous cases.

In the case at bar, it is not necessary to resort to any rigorous rules. Here was a cow directly by the track, and in a position difficult of escape except upon the track. She was in plain sight of the engineer, in open daylight. Besides, she was where he had been warned to expect cattle. He pays not the slightest heed to this danger, but rushes on, in seeming entire disregard of it and of the consequences. It seems to me his conduct would have been inexcusably careless if his train had been freighted with dry goods instead of human beings. At least, there was sufficient evidence of negligence to go to the jury.

The judgment should be reversed and a new trial ordered; costs to abide the event.

Judgment accordingly.