## N. Y. SUPERIOR COURT.

JAMES PENDRIL, by his guardian, &c., appellant, agt. THE
SECOND AVENUE RAILROAD COMPANY, respondent.

Two boys, one twelve and the other five years of age—the eldest leading the
youngest by the hand, undertook to cross the Second Avenue, from west to east,
near 28th Street in the city of New York, about noon in the day; a Second
Avenue street-car was approaching them, and about ninety or a hundred fee
south of them, upon an up grade, when they reached the westerly rail of the
railroad; and after the eldest boy had cleared the easterly track and the horses,
the off horse struck the youngest boy—who was a little behind, knocked him
down and the forward wheel of the car ran over him and severed his right arm
near the shoulder.

On the trial the testimony showed that the car in which was but a few passengers,
was driven with great rapidity—so much so that the witness would be unable
to get on or off it; that the driver stood on the front platform leaning his shoulders
against the car, with loose reins which he was swinging up and down upon the
horses to urge them to greater speed; that with proper driving and care the car
could have been stopped within sixteen to twenty-two feet, and the collision
avoided:

*Held,* that the judgment dismissing the complaint, and the order denying a new
trial upon the judges' minutes, appealed from, be set aside, and a new trial
ordered.

*Argued General Term, January,* 1872.

*Decided May* 30, 1872.

*Before* CURTIS, P. J., McCUNN *and* SEDGWICK, *JJ.*

THIS action comes before the court on an appeal by the
plaintiff, from a judgment entered upon an order dismissing the
complaint, and also from an order denying plaintiff's motion
for a new trial. The plaintiff sues to recover damages for
alleged negligence on the part of the defendants in driving
one of their cars over him, and cutting off his right arm.
The defendants denying negligence on their part, and set up
that the injuries were occasioned by the negligence of the
plaintiff. It appeared on the trial, that the plaintiff, a boy

of five years of age, with a large boy about twelve, who held him by the hand, attempted to cross the Second Avenue, at the upper 28th street crossing. The boys passed over defendants' westerly track, and had passed so far upon their easterly track, that the large boy was clear of the horses of defendants' car, which was being driven up the avenue, but the small boy, the plaintiff, was thrown down by the off horse, and run over by the car-wheel, and was lying when the car was stopped, between the wheel on the easterly rail of the track, with his arm so nearly severed at the shoulder, that it had to be amputated.

The evidence shows, that the boys were on the westerly track and crossing over towards the easterly track upon the crossing when the car was about ninety or a hundred feet from them. That the car was driven "very rapidly," the horses were on a "fast gait." The witness was not positive whether they were running or trotting. It appears that the rate of speed was such, that it was unsafe for the witness to get on or off at the time. The grade was ascending up which the car was coming, with very few passengers in it. The driver was on the front platform, standing with his back against the front of the car or window. The reins were slack, and he held them in both hands, shaking them.

It was about noon, a clear day, and the plaintiff conspicuously dressed. The pole of the car was ten feet in length, and the car twenty-two feet, making thirty-two feet in length, and from the testimony, considering the grade and the load, could have been stopped in from sixteen to twenty-two feet.

ALBERT MATTHEWS, *for appellant.*

*First.* Although there has been some apparent wavering among our different courts upon the rule of law applicable to the question of "negligence" in this class of cases, it may now be deemed finally settled, by the court of appeals: that

where the conclusion of negligence on the part of either plaintiff or defendant, is a fact to be drawn from a variety of facts and circumstances, neither of which is in itself clear and decisive, it is always "a question of fact exclusively within the province of the jury;" and that it is a matter of right to have the issue of "negligence" submitted to the jury, when it depends on "inferences to be derived from a variety of circumstances in regard to which there is room for a fair difference of opinion between intelligent and upright men" (*Ireland* agt. *O. H. & S. Plank R. Co.*, 13 *N. Y.*, 533 ; *McGrath* agt. *Hudson R. R.R. Co.*, 32 *Barb.*, 147 ; *Keller* agt. *N. Y. Central R.R. Co.*, 24 *How.*, 177 ; *Creed* agt. *Hartmann*, 29 *N. Y.*, 592 ; *Mulhado* agt. *Brooklyn City R.R. Co.*, 30 *N. Y.*, 373 ; *Ernst* agt. *Hudson R. R.R. Co.*, 35 *N. Y.*, 38 *to* 40, *and* 46 *& 47* ; *Maloy* agt. *N. Y. Central R.R. Co.*, 8 *Barb.*, 184)

*1st.* "Negligence" in general is a question ordinarily to be submitted to the jury as matter of fact (*see points of counsel,* 3 *Robts.*, 27 ; *Phillips* agt. *Renns. and Saratoga R.R. Co.*, 57 *Barb.*, 644).

*Second.* The defendants were clearly shown to be in the wrong, by reason of rapid and reckless driving. Now, whether the plaintiff was also in the wrong, by attemping to cross the track as he did, and miscalculated the time required for the car to reach him, was a question of fact for the jury (*Hogan* agt. *Eighth Avenue R.R. Co.*, 15 *N. Y.*, 383 ; *Mentz* agt. *Second Av. R.R. Co.*, 2 *Robt.*, 356 ; *Aff'd. Ct. of Appeals*, 1869, *Alb. Law Jour., Feb. 5th,* 1870.)

*1st.* On a motion for nonsuit, all facts and circumstances and inferences of fact, are to be taken most strongly in favor of the plaintiff (*Ernst* agt. *Hudson R. R.R. Co.*, 35 *N. Y.*, 25).

*2d.* From the point where the boy stood, near the westerly or down track, when he started to cross the tracks, a line from his eye to the car, intersecting with the line of the easterly or up track of the railway, formed an angle so acute, at the place where the car then was (while the boy was

thus attempting to cross the tracks), that a highly experienced adult might well have miscalculated, both as to the distance and as to the excessive speed of the horses approaching him.

3d. Although, by unusual precaution and watchfulness on the part of the plaintiff, the consequences of defendants' wrong might have been avoided, yet if the plaintiff was guilty of no culpable negligence, the mere fact that he might have been "more vigilant," will not exculpate the defendants (*Fero* agt. *Buff. and S. Line R.R. Co.*, 22 *N. Y.*, 215; *Ernst* agt. *Hudson R. R.R. Co.*, 35 *N. Y.*, 26).

4th. The plaintiff had as good right to use the highway as the defendants, and he was in a place of safety at the time of the injury, except as that place was made dangerous by the unlawful act of the defendants in running their cars at an unlawful and dangerous rate of speed (*Ernst* agt. *Hudson R. R.R. Co.*, 35 *N. Y.*, 26; *Baxter* agt. *Second Avenue R.R. Co.*, *Rob.*, 516).

5th. The defendants being themselves wrongdoers, the plaintiff was under no obligation to them to be cautious or circumspect. He was only disabled from holding them responsible n case he was deficient in ordinary prudence (*Tonawanda R.R. Co.* agt. *Munger*, 5 *Denio*, 266).

6th. The plaintiff is not barred from a recovery even if he were himself guilty of "slight neglect" or absence of extreme caution. He was only called on to exercise ordinary care and caution under the circumstances (*McGrath* agt. *Hudson R. R.R. Co.*, 32 *Barb.*, 144).

*Third.* The circumstances that the plaintiff was a young child, did not necessitate greater diligence or caution on his part than if he had been an adult. But this very circumstance of his extreme youth, coupled with the fact that the defendants were driving a dangerous and powerful machine through a public highway, obligated them to use extra care and caution to avoid inflicting injury upon persons crossing that public highway in the ordinary course of their business (*Sheridan* agt. *Brooklyn & Newtown R.R. Co.*, 36 *N. Y.* 42;

*Cook* agt. *N. Y. Cent. R.R. Co.*, 3 *Keyes*, 479 ; *Lynch* agt. *Smith*, 104 *Mass. Rep.*, 52).

1*st*. Indeed what might be deemed "negligence," in a person of mature years, might not be regarded as "negligence" in so young a boy (*O'Mara* agt. *Hudson R. R.R. Co.*, 38 *N. Y.*, 445).

2*d*. There is no legal principle which imputes to an infant "negligence" of his parents ; when the infant himself is free from "negligence," and if he were an adult he would not be affected by such "negligence" (*Lannen* agt. *Albany Gas Light Co.*, 46 *Barb.*, 270-1).

3*d*. Indeed, it is now held in our highest court, that an infant can maintain an action for an injury resulting from the "negligence" of another, save only when he has himself omitted such care, as might be reasonably expected from one of his capacity (*Mangum* agt. *Brooklyn C. R.R. Co.*, 38 *N. Y.*, 455).

4*th*. This plaintiff was under sufficient protection and care to save him from voluntary exposure to damage, if he had been disposed to precipitate himself into it. In point of fact, he acted with all the ordinary care of a sagacious adult.

5*th*. There was, however, no obligation on the part of the parents of the plaintiff to provide a protector to prevent injury to him from the defendants' wrongful acts (*Sheridan* agt. *Brooklyn & N. R.R. Co.*, 36 *N. Y.*, 43).

*Fourth*. All the circumstances of this case should have been submitted to the jury, so that they might have determined how far such circumstances tended to establish the assumed fact of "negligence" on the part of the plaintiff (*Ginnon* agt. *Har. R.R. Co.*, 3 *Robts.*, 30 ; *Baxter* agt. 2*d Avenue R.R. Co.*, 3 *Robts.*, 515).

1*st*. The speed at which the car was running, the facility with which the defendants' driver might by ordinary care have obviated the danger of injury to the plaintiff by reason of the conspicuous dress of the latter, the circumstance that

the boys were crossing in front ot him, the brightness of the light of the day, were all circumstances tending to show gross negligence on the part of the defendant.

2*d.* The distance of the car from the boys when they had reached the middle of the street, the probability that the defendants' driver would see the two boys and refrain from attempting to kill them, the freedom of the street from any other interrupting obstacles, the age and activity of the two boys, and the escape of the one, were also all circumstances bearing upon the questions of fact, (whether plaintiff himself was exercising "that degree of care which might be expected" from a person in plaintiff's situation, and whether there was an absence of culpable negligence on his part), which should have been submitted to the jury.

3*d.* If it be claimed that any inference of "negligence" is to be drawn from the fact of allowing the plaintiff to be in the street on this bright clear day, at noon, with no other companion than the elder boy, then this, too, was purely a question of fact for the jury to determine (*Drew* agt. *Sixth Avenue R.R. Co.*, 26 *N. Y.*, 52; *Jetter* agt. *N. Y. & Harlem R.R. Co.*, 2 *Keyes*, 159; *Mangam* agt. *Brooklyn R.R. Co.*, 38 *N. Y.*, 455).

*Fifth.* The nonsuit should be set aside, and a new trial ordered.

JOHN SLOSSON, *for respondent.*

*First.* The nonsuit was properly granted, as there was no evidence to sustain a verdict against the defendants.

There was no evidence of any negligence on the part of the defendants; on the contrary, the evidence tends to show that the driver of the car used great diligence to prevent the accident.

The only witness of the particulars of the accident, was William E. Arnold, who, when it occurred, was sitting under a cart on the west side of Second Avenue, opposite the

second house, below Twenty-eighth street. He was engaged in painting the cart, with his head bent, and his story is extremely vague.

The car was going up the avenue on the easterly track, and, according to the witness, when it was opposite to him he saw the plaintiff, a little boy, holding the hand of a larger boy, crossing the avenue from west to east on the upper crossing of Twenty-eighth street, and they "seemed" to him then to have reached the easterly rail of the westerly track. Whether the boys were running or walking he could not tell. What they did after that he does not tell, except that the plaintiff when struck was "standing." He at this time was looking under the car, and could see the legs of the boy only. What he says about the car is equally vague. He says it was going faster than usual (but that is always the story in horse-railroad accident, cases, and means, if anything, that it was going five or six miles an hour); that when opposite to him the driver was "standing very carelessly in front of the car. He had the lines "in both hands shaking them." After the car passed him he, of course, lost sight of the driver, and says, "I do not know how soon he attempted to hold up his horses, nor what position his hands was in with regard to the brake, nor what position he was in with reference to the lines." Again he says, "I do not know what he (the driver) did after he passed me."

The boy was picked up between the wheels—that is, between the front and rear wheels on the easterly rail of the easterly track, the car having come to a stand-still.

This is all the evidence in the case, bearing on the question of the defendants' negligence when the plaintiff rested, and from it, this conclusion inevitably follows:

Assuming that the driver saw the boys, when he was opposite where the witness Arnold was, they were still on the westerly track, in a place of safety.

1st. He had a right to assume that they would not attempt to run in front of his rapidly advancing horses, and to act on

that presumption (*Newson* agt. *N. Y. Central R.R. Co.*, 29 *N. Y.*, 383). .

When he saw they were actually going to do it, his horses had approached them very nearly, for it is obvious that the distance was very rapidly diminishing every moment. He may have supposed, and probably did, as he had a right to, that after leaving the westerly track, they would stop until the car had passed, but it is perfectly clear that the moment he became convinced that they were about to attempt to cross him in front, he used every exertion to stop the car, for the boy was picked up about half the length of the car, between the fore and hind wheels, a distance of twenty-one feet from the extremity of the pole, and after the car had come to a stand-still; this according to Stephenson, was " good working" of the brakes. And it shows that from the moment the driver saw that the boys were about to perform this hazardous feat, he used every possible exertion to prevent an accident, and so far succeeded that an instant more of time would have saved the boy, for he was evidently knocked down by the easterly horse. At all events, the evidence is, that it was the easterly wheel which passed over him, he had therefore, cleared the horse nearest to him, and was knocked down by the other horse.

It will be observed that, this is not the case of a car running over a person lying before it disabled on the rails, but of a collision with a person in the street, having full power of locomotion, who an instant before was in a place of safety, which the driver had a right to assume he would not quit, and to govern his own conduct accordingly, but which he voluntarily and without necessity did quit, to cross a space of about five feet in front of the driver's horses, when they were so near that the experiment may be said to have been one of life and death.

Under such circumstances, a verdict, finding negligence on the part of these defendants, could never have been sustained.

*Second.* The plaintiff's negligence is self-evident. He attempted to run in front of the horses, which when he left the westerly track, were at but a short distance from him, and advancing with rapidity. He left a place of safety when there was no occasion for his doing so; and when he reached the easterly track, the horses must have been almost up to him; but instead of stopping to let them pass, he rushed in front of them; and so near were they to him, when he touched the easterly track, that he was actually knocked down by the further horse, showing beyond peradventure, that he attempted the fearful experiment, when the horses were almost upon him. The plaintiff cannot plead that he did not see the car. There was no obstruction to the visions as Arnold swears. If he did not look, that was of itself such negligence as precludes a recovery, and the law will presume that he did not look, if the evidence does not show, that the vision was obstructed by other objects, so that he could not have seen an approaching car, and there is no such evidence in this case. This rule is settled beyond all dispute in *Wilcox Admx.* agt. *Rome, &c., R.R. Co.,* (39 *N. Y.,* 358) ; *Ernst* agt. *H. R. R.R. Co.,* (39 *N. Y.,* 61), approved in *Havens* agt. *Erie Rw. Co.,* (41 *N. Y.,* 296), and to same effect, *Harty* agt. *Central R.R. of N. J.,* (42 *N. Y.,* 468), as well as in other cases.

If he did look and saw the car, which he could not help doing, if he had looked, then his conduct was not only negligent, but madness itself, and deprives plaintiff of all right of action (*Ernst* agt. *Hudson R. R.R. Co.,* 35 *N. Y.,* 9).

If he had stopped as he should have done, and the driver had a right to assume he would do, before he reached, or even, at the westerly rail of the easterly track, he would have been safe. At that moment the horses were so near him, that he could only clear one of them, yet he made the experiment.

Even if negligence on the part of the driver had been

·proved, that act of plaintiff's under all the decisions·precludes 'a recovery.

The fact, that the plaintiff was a child makes no difference in the application of the rule. This is well settled (See Court of Appeals decision in *Honigsberger* agt. *Second Ave. R.R.; Co.*, 31 *How.,*     ; *Burke* agt. *Broadway & Seventh Ave. R.R. Co.*, 49 *Barb.*, 527).

*Third.* Under this evidence a nonsuit was · inevitable, the motion to set it aside should be denied with costs. ·

*By the court*, CURTIS, *J.*—The appellants claimed upon the argument, that it was a matter of right to have the issue of negligence submitted to the jury, where it depends on ·"inferences to be derived from a variety of circumstances, in regard to which ·there is room for a fair difference of ·opinion between intelligent and upright· men." That all the circumstances of this case should have been submitted to the jury, so that they ·might have determined how far such circumstances tended to establish the assumed fact of ·negligence on the part of the plaintiff and that plaintiff's extreme youth obligated defendants to use extra care and caution to avoid inflicting injury.

On the part of the respondents it was claimed, that there was no negligence on the part of the defendants, but on the contrary, that the evidence tended to show that the driver of the car used great diligence to prevent the accident, and that the negligence of the plaintiff is self-evident.

The question arises, whether this is a case that should have been left to the jury. It is undoubtedly true, that when the negligence of the plaintiff is clearly shown, there may be occasions, when it becomes the duty of the judge to dismiss the complaint. But it does not appear that this is a case of that character. The evidence shows, that the car was being driven at an unusual and rapid rate of speed, up an ascending grade, that the driver was leaning back on the front platform, shaking his loose reins. It was noon, his

view was unobstructed, and when he stopped the car, the front wheel had passed over the plaintiff. As the plaintiff approached the track passing over the westerly track first, the car was ninety or one hundred feet off. It could have been stopped in from sixteen to twenty-two feet. A careful driver, with proper control of reins and brakes, could have avoided the collision. With reins held taut, the driver could have sheered the horses off the track and prevented the knocking down, by the off horse, of the plaintiff as he passed over the easterly rail of the track. A proper control and use of the brake could have certainly stopped the car a fraction of a second sooner, which would have prevented the wheel passing over the plaintiff. It looks as if the driver did not get himself in a position to stop the car until the horse was upon the plaintiff, and then it was too late to arrest its motion by some five or six feet, so as to save plaintiff from the wheel. An adult might be deceived in the rate of approach and speed of a street-car driven unusually rapid, and least of all at such a time, should the driver be as the witness testifies, " carelessly in front of the car, the lines in both hands shaking them." Apparently urging his horses to a still higher rate of speed.

His duty was to have the reins and brake in his control, and to drive in a careful and usual manner. It is impossible to conceive that a man, put in so responsible a position by the defendants, would wantonly drive over a child, but it looks very much as though he was driving in an inconsiderate and negligent manner. The negligence, if any, of the plaintiff crossing the avenue, led by the hand of another child of maturer years, under these circumstances is not so apparent as the respondents claim. On the contrary it seems difficult to see wherein it consists. An adult acting with reasonable prudence, might be deceived by unusual and careless driving and run over in consequence of it.

It would be a retrograde movement in civilization, to establish a rule, that those who obtain the privilege of run-

ning horse-cars on railways through the streets of a crowded city, can run them without some observance of care and protection towards those whom old age, infirmity or tender years, commend to universal consideration and care.

The theory that the cars in such a case would be a longer time in making their trips and that children should be kept in the house, or under the care of some suitable protector when they go in the streets, has no controlling force. The idea of feudality, that the footman must keep out of the way of the horseman, has given place in the most enlightened and civilized cities of the world to a careful and practical consideration for the pedestrian, increasing in proportion to personal incapacity. The concession of privileges to increase the means of communication through the streets of a city, does not, even by implication, waive any privilege of personal safety to the citizen and his household. Their rights and welfare are not relinquished to favor any increase of speed.

The child has its rights. One is to be educated by the state, which provides instruction at certain hours of the day. The streets and avenues traversed by horse-railways are thronged and crossed necessarily by many tens of thousands of children on their way to, or from places of instruction, profiting by this public provision and invitation extended to them. To have an adult custodian with any considerable number of them would be impossible. To keep them home would conflict with the best interests, and the established system of the state, and be a denial of the rights of the child.

Judge MASON, in *Mangam* agt. *Brooklyn R.R. Co.*, (38 *N. Y.*, 461), defending the rights of children of tender years, says: "They are not beyond the pale of the law when in the streets; common humanity is alive to their protection, and the law both in reason and justice, and out of compassion to their weakness and inability to protect themselves, should throw a broader shield of protection around them, against injuries from the careless conduct of the strong, than it affords to an adult, who is capable of self defense and protection."

Judge GROVER, in the same case considers "that a some-what different rule in determining the care to be exercised, is to be applied to infants than is applicable to adults, when the inquiry is, whether their negligence has contributed to an injury received." In the case of *O'Mara* agt. *The Hudson R. R.R. Co.*, (38 *N. Y.*, 449), the same views are sustained, and Chief Judge HUNT affirms that the young "cannot be required to exercise as great foresight and vigilance as those of maturer years. This an engineer is bound to know, and if the child is in his view, to act accordingly."

These observations apply with great force to the case under consideration. There is not shown in it that negligence on the part of the plaintiff, that sustains a departure from the general rule, that the question of the contributory negligence of the party injured, should be left with the jury. It may be regarded as now in accordance with the uniform tenor of the recent English cases, and those in our courts, that the general question of negligence of the defendants, and the contributory negligence of the plaintiff, are exclusively within the province of the jury (*Lunt* agt. *Railway Co.*, 1 *Law Rep.*, *Q. B.*, 277; *Beebee* agt. *Railway Co.*, 18 *Com. B. N. S.*, 584; *Stupley* agt. *Railway Co.*, 1 *Law Rep. Ex,*, 21; *Stubley* agt. *Railway Co.*, 1 *Law Rep.*, 13; *Hogan* agt. *Eighth Ave. R.R. Co.*, 15 *N. Y.*, 383; *Ernst* agt. *Hudson R. R.R. Co.*, 35 *N. Y.*, 38; *McGrath* agt. *Hudson R. R.R. Co.*, 32 *Barb.*, 147; *Malloy* agt. *N. Y. Central R.R. Co.*, 58 *Barb.*, 184; *Mulhado* agt. *Brooklyn City R.R. Co.*, 30 *N. Y.*, 373; *Brown* agt. *N. Y. Central R.R. Co.*, 34 *N. Y.*, 404; *Creed* agt. *Hartman*, 29 *N. Y.*, 592; *Keller* agt. *Hartman*, 24 *How.*, 177; *Mentz* agt. *Second Av. R.R. Co.*, 2 *Robts.*, 357; and affirmed in court of appeals, *Alb. Law Jour.*, *Vol.* 1, 99). In view of what may be considered the settled law in respect to these questions, this case should have gone to the jury.

The judgment and order appealed from should be set aside, and a new trial ordered.

McCUNN and SEDGWICK, *JJ.*, concurred.