IN THE MATTER OF THE APPLICATION OF THE NEW YORK, WEST SHORE AND BUFFALO RAILWAY COMPANY, RESPONDENT, TO ACQUIRE LANDS OF THE NEWBURGH AND NEW WINDSOR TURNPIKE ROAD COMPANY, APPELLANT.

*Turnpike company — crossing of its road by a railroad company — right of the latter to move the road and construct a new bridge for it — the right of the turnpike company to collect tolls is not affected by the removal.*

A turnpike company was created by chapter 91 of 1806, and authorized to build a draw bridge across the mouth of a creek, now called Quassaic creek. The act also authorized the company, after the bridge had been constructed and accepted by certain officers, acting in behalf of the State, to erect a turnpike and gate upon the bridge and collect tolls from all persons using the same. After the bridge had been constructed and used for many years, a railroad company located its line so that its road crossed the creek at the place where the bridge was erected. It accordingly built a new bridge for the turnpike company about forty feet west of the old one, and constructed a new road, connecting the new bridge with the unaltered portions of the old road.

*Held*, that power to construct the new bridge and road for the use of the turnpike company was conferred upon the railroad company by section 24, and subdivision 5 of section 28 of chapter 140 of 1850, and by section 4 of chapter 19 of 1851.

That the construction of the new bridge to the west of the old one and the removal of the road did not amount to a discontinuance of the old road and the opening of a new one, and in no way destroyed or affected the right of the company to collect tolls from all persons using its road and bridge, as changed by the railroad company.

APPEAL from an order made at Special Term, confirming the report of commissioners appointed to ascertain and appraise the damages to be paid by the above-named railway company to the above-named turnpike company.

*James W. Taylor*, for turnpike road, appellant.

*C. F. Brown*, for railway company, respondent.

DYKMAN, J.:

In the location and construction of the railroad of the petitioners on the right bank of the Hudson river, it becomes necessary to lay it on the old bed of the Newburgh and New Windsor turnpike

road.   This turnpike road was constructed by a company formed under a law of the State enacted in April, 1806, for its incorporation.   Power was conferred on the company to build a draw-bridge across the mouth of Chambers creek, now called Quassaic creek, the dividing line between the city of Newburgh on the north and the town of New Windsor on the south.   That bridge was to be constructed with a draw gate.   After the completion of the road and bridge, and after an affirmative report by the commissioners appointed by the persons then administering the government of the State, that the same were workmanlike, according to the true intent and meaning of the law, the company was to receive permission to erect a turnpike and gate on the bridge and collect toll and duty from all persons using the same.   All these conditions received compliance and the company went into full life and operation, and has so continued to this time.   The railroad is located so that it will cross the creek at the place where the draw-bridge is erected, and a new bridge has been built across the creek for the use of the turnpike company, about forty feet west of the railroad, and a new road has been constructed west of the railroad, in conformity with the removal of the bridge, to lead to and from it, so as to be used in connection therewith in the same manner as the old one.

Commissioners have been appointed, in pursuance of the provisions of the general railroad law of the State, to appraise the damages of the turnpike company, and they have awarded the sum of $300.   In their report, however, they have stated that such allowance was confined to the actual value of the property taken and does not embrace any allowance for deprivation of franchise or the right to collect toll.   This report has been confirmed and the order of confirmation provides that the turnpike company is not deprived of its franchise nor of its right to collect toll, and that the rights and privileges of the company in the road and bridge as they will exist after their restoration by the railroad company, as provided by law, will be the same as they now are in the old structures, including the same rights to collect toll on the new bridge as restored, as now exist in respect to the present bridge.

We now have an appeal from the order, and the complaint is that the franchise of the turnpike company is destroyed and that it will have no right to collect tolls on the new bridge, because it

will not be the one provided for in the act of incorporation. We must give examination to the questions thus presented.

It is among the provisions of the general railroad law of the State that every corporation formed in pursuance thereof shall have power to construct their road across, along or upon any turnpike on condition of its restoration to its former state or to such state as not unnecessarily to have impaired its usefulness. (Sec. 28, chap. 140, Laws of 1850, subd. 5.) A further provision of the same law is, that whenever the track of a railroad constructed thereunder shall cross a turnpike, the same may be carried under or over the track, and where an embankment or cutting shall make a change in the line of such turnpike desirable, the company may take such additional lands for the construction of such turnpike on such new line as may be deemed requisite by the directors. The same, when so taken, shall become part of such intersecting turnpike, in such manner and by such tenure as the adjacent parts of the same turnpike may be held for highway purposes. (Sec. 24, chap. 140, Laws of 1850.) Again : In case any railroad shall occupy or cross any turnpike, the railroad company shall pay such turnpike company all damages it may sustain by reason of the occupancy or crossing of the same, the damages to be ascertained and paid in the same manner as is provided by law for the assessment and payment of damages in case of taking private property for the use of railroad companies. (Chap. 19, Laws of 1851, § 4.)

These statutory provisions are adapted well to this case, and provide a system by which railroad corporations may exercise the right bestowed on them to occupy the road-bed of a turnpike or highway and restore it to the public again without unnecessary destruction of its usefulness. Plainly by subdivision 5 of section 28, above cited, a railroad may be constructed on a turnpike road, and as plainly the obligation is imposed on the railroad corporation to restore it to usefulness, not unimpaired it may be, but to practical utility. This railroad company, then, has lawfully appropriated the bed of the turnpike for the track of its road, and as it cannot be restored without a change and removal, an implication of power and authority so to do is easily collected from the statutes already referred to. It is manifest that if the track is laid along or upon a highway, the highway must itself be removed away from the

track, or its usefulness will be impaired. The track of the railroad cannot be constructed and maintained upon a highway, and the usefulness of the latter not be impaired unnecessarily, as required by section 24, without a removal or change in the highway. It may be that such removal or change cannot be made without the taking of other lands, on to which it shall be removed. (*People ex rel. Green* v. *D. and C. R. R. Co.*, 58 N. Y., 164.) Plainly, therefore, change and removal of the turnpike road may be effected under the railroad law. It is urged by the appellant, however, in further objection, that even though such provision be made for the restoration of the turnpike road for highway purposes, yet there exists none for changing the location of toll bridges and toll gates. In our view nothing can be conceded to this position. Bridges across water ways and culverts to permit the flow of surface water are necessary on all highways intersected by such water streams. They are an essential part of the road, and a turnpike company is bound to erect them and keep them in repair wherever they are necessary, though the act of incorporation be silent on the subject of bridges entirely. (*The People* v. *Hillsdale, etc., Co.*, 23 Wend., 254.) It is also urged that the change of the turnpike road and the substitution of a new bridge across the creek in a different place, amounts to a discontinuance of the old road, and the opening of a new one, and hence the turnpike company will have no right to collect tolls on the new bridge. To this contention we cannot yield assent. It overlooks the important fact that what has been accomplished is an alteration of the turnpike road. (*Brown* v. *N. Y. C. R. R. Co.*, 34 N. Y., 407.) A restoration and not a destruction. For all purposes it is the same turnpike road, and the statute already quoted provides in terms that the land taken for the change in the line of the turnpike road shall become part of such intersected turnpike in such manner and by such terms as the adjacent parts of the same turnpike may be held for highway purposes. The land on which the alteration is constructed is therefore a constituent portion of the old turnpike road, and the new bridge is in place of the old one, and is an essential part of the same road. Both are held by the same tenure as the adjacent parts of the turnpike, and the legal rights, duties and obligations bestowed and imposed by the original turnpike charter are now in full force and operation. The right to exercise the

franchise of the turnpike company is neither impaired nor interfered with. Neither is its right of property, beyond appropriating the old bed of its road, for which compensation has been awarded by the commissioners. It now owns the altered road and the new bridge. Any other construction of these statutory provisions would render them altogether nugatory. Followed to its legitimate result the contention of the appellant, if allowed, would compel a railroad corporation to buy out a turnpike company and pay for its franchises and its property, even for the appropriation of one single rod of its road, and disallow the restoration of the highway for which the legislature has so assiduously provided. These views are not antagonistic to the doctrine inculcated in the Binghamton and Chenango bridge case. The Supreme Court of the United States there held, that a legislative charter constituted an inviolable compact, and that another company would not be authorized within a limited distance. (*The Binghamton Bridge*, 3 Wall., 51.) But here no new turnpike company is authorized, no new road is constructed and no right of the old company is abridged or interfered with.

The order should be affirmed, with costs and disbursements.

GILBERT, J., concurred ; BARNARD, P. J., not sitting.

Order confirming commissioner's report affirmed, with costs and disbursements.