## DORR, Jr., v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Fourth Department.   July 9, 1912.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—NONSUIT.
>    On appeal from a judgment of nonsuit, all inferences deducible from the evidence should be in favor of plaintiff.
>    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2912, 2917, 3748, 4024; Dec. Dig. § 927.*]

2. CARRIERS (§ 298*)—CARRIAGE OF PASSENGERS—INJURY TO PASSENGERS.
>    Where a passenger was injured through the sudden stopping of a train whose speed was slackened in an attempt to prevent an injury to a person on the tracks at a crossing, the railroad company is liable, even though the person on the track was negligent, if it was negligent in failing to give proper warnings, and in not having a flagman or gates at the crossing; and so, where the evidence on that point was conflicting, the question was improperly taken from the jury.
>    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1192, 1205, 1206; Dec. Dig. § 298.*]

>    Spring and Robson, JJ., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Cornelius Dorr, Jr., against the Lehigh Valley Railroad Company.

The action was commenced on the 19th day of June, 1911, to recover damages sustained by the plaintiff alleged to have been caused solely through the negligence of the defendant. At the close of the evidence, the court denied defendant's motion for a nonsuit, but reserved decision pending the verdict of the jury. The cause was duly submitted to the jury, who returned a verdict in favor of the plaintiff in the sum of $4,000. Upon motion of the defendant's counsel the verdict was set aside and the nonsuit granted. From such judgment of nonsuit this appeal is taken. Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Thomas Woods, of Syracuse, for appellant.
James M. Mitchell, of Buffalo, for respondent.

McLENNAN, P. J.   On the 25th day of May, 1911, the plaintiff boarded one of the defendant's trains as a passenger at Camden, N. Y., for the purpose of riding to Sylvan Beach, N. Y., between which points the defendant operated part of its railway system. The tracks of the defendant's railroad run in a southerly direction toward Sylvan Beach and the tracks of the Rome, Watertown & Ogdensburg Railroad Company run nearly parallel with the tracks of the defendant, and are some 50 or 60 feet easterly from them. On the day of the accident, as the train upon which the plaintiff was a passenger was leaving Camden station, there was another train on the Rome, Watertown & Ogdensburg Railroad tracks going in the same direction, leaving at about the same time. It appears that about a quarter of a mile south of the Camden station there is a highway crossing at grade, crossing both the tracks of the defendant and the tracks of the Rome, Watertown & Ogdensburg Railroad, known as the Preston

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hill crossing. This crossing is within the village limits of the village of Camden, and at the time of the accident there were no gates or flagman maintained at this crossing by the defendant company, and, so far as appears, never had been. The train in question proceeded south from the Camden station toward the Preston Hill crossing, gradually increasing its speed from 10 to 20 miles an hour. About an eighth of a mile from the station the engineer sounded the whistle for the crossing. The Preston Hill crossing, so called, crosses the Rome, Watertown & Ogdensburg tracks and the defendant's tracks at an angle a little less than a right angle, and at the time the defendant's train was proceeding from the station toward the crossing in question there was an old man by the name of Durr walking along the sidewalk on the Preston Hill road from the direction of the Rome, Watertown & Ogdensburg tracks toward the tracks of the defendant. The defendant's engineman, who was on the right side of the cab, did not see Durr coming, and the fireman first saw Durr halfway between the Lehigh Valley and the Rome, Watertown & Ogdensburg tracks, walking slowly, pushing a lawnmower in front of him. The man came to within a few steps of the defendant's train, when, as he did not stop, the fireman yelled to the engineer to stop. The engineer thereupon applied the emergency brakes instantly, but was unable to stop the train before it had passed over the crossing, and struck Durr, causing his death. The sudden impact resulting from the application of the emergency brakes caused the injuries to the plaintiff for which he complains.

There is a dispute in the evidence as to whether or not any bell was rung or other warning given, and the inference is proper that the man who was killed saw the train approaching on the tracks of the Rome, Watertown & Ogdensburg Railroad Company and safely crossed ahead of the train, which was approaching on those tracks, and, if any warning was given by the engineer or fireman on the defendant's train, he apparently believed that such warning came from the train belonging to the Rome, Watertown & Ogdensburg Railroad Company, and that, therefore, having crossed the tracks in safety, he did not have to give attention to such warning. The plaintiff claims that the defendant was guilty of negligence in the management and operation of its train, and the sole question presented upon this appeal, a nonsuit having been granted, is whether or not there is any evidence which would justify the submission of the case to the jury.

The plaintiff proved that he was a passenger in one of the defendant's cars; that without warning, and while the train was proceeding at a speed of about 20 miles an hour, within the village limits of the village of Camden, the train came to a sudden stop with a violent jolt, throwing the plaintiff out of his seat, and causing the injury in question. The defendant gave evidence tending to show that the accident occurred by reason of the negligence of Durr; that the usual crossing signal was given, two long and two short blasts of the whistle, when the engine was about halfway between the station and the crossing; that the speed of the train was between

10 and 12 miles an hour; that the engineer did not see the man who was killed; that the fireman first saw him halfway between the Lehigh and the Rome, Watertown & Ogdensburg tracks, walking slowly along, pushing a lawnmower in front of him; that the fireman did not see Durr look up, but thought that he was going to stop; that when Durr came to within a few steps of the defendant's train, as he did not stop, the fireman yelled to the engineer to stop, who thereupon applied the emergency brakes instantly, but was unable to stop the train before it had passed over the crossing and struck Durr, the man who was killed. The defendant claims that no negligence is imputable to it, for the reason that the accident to the plaintiff happened as the result of an effort on the part of the engineer of its train to avoid killing or injuring a third person, whose negligence, it is claimed, was the proximate cause of the accident, for which the defendant is not responsible.

[1] It is well settled that upon an appeal from a judgment of nonsuit the appellant is entitled to the most favorable inferences deducible from the evidence, and, if from the evidence produced the jury would be authorized to find a verdict for the plaintiff, the nonsuit was error.

[2] We think the court erred in granting a nonsuit in this case. From the evidence presented the jury was justified in inferring negligence on the part of the defendant in the management and operation of its train. It is undisputed that the man who was killed crossed the tracks of the Rome, Watertown & Ogdensburg Railroad Company in safety, and at the time was proceeding toward the tracks of the defendant's railroad; that at that time a train was approaching on the tracks of the Rome, Watertown & Ogdensburg Railroad, and the jury would be justified in inferring that the dead man saw that train approaching; and that, after he crossed those tracks in safety, he did not give attention to any warnings which might have been given by either train, believing that such warnings came from the train on the Rome, Watertown & Ogdensburg tracks. It is undisputed that the only warning given by the defendant's engineer was the ordinary crossing signal consisting of two long and two short blasts of the whistle. Therefore a question of fact was presented as to whether or not the defendant, under the circumstances, used all the care and skill in the management and operation of its train which it was required to use for the protection of its passengers. It is also undisputed that the defendant did not maintain gates or keep a flagman at the crossing in question, and it was a question of fact for the jury to say whether or not the defendant exercised the care and prudence imposed upon it to protect its passengers from injury. The jury might well have found, under the evidence in this case, that, if there had been gates or a flagman at this crossing, the accident would not have happened, for the reason that the man who was killed could not have gotten upon the tracks, and especially is this true when we take into consideration the evidence that the fireman saw the man approaching, but supposed that he was going to stop, and therefore did nothing to warn him or to stop the train until it was too late. These were all questions of fact

for the jury upon the proposition as to whether or not the defendant was guilty of negligence in the operation and management of its train.

In the case of Brown v. N. Y. C. & H. R. R. Co., 34 N. Y. 404, a passenger in defendant's train was injured in consequence of a collision with a cow feeding on the track, and the defendant claimed that, because the statute did not require it to maintain fences at that particular place, it was not liable to the passenger injured, and in the opinion of the court, written by Peckham, J., it is said:

"It is no answer to say that the statute allowed the defendant to run without constructing any fence or cattle guard or having a watchman to keep off cattle from the road in such case, and, if the road comply with the law, it cannot be liable. The statute has imperatively required certain things to be done; but such requirements are by no means the measure of the defendant's care or conduct in the transportation of passengers. These requirements the road must comply with; but it cannot therefore neglect other necessary and proper precautions. The defendant here was bound to exercise all the care and skill which human prudence and foresight could suggest. This language is broad and comprehensive, but it is the language of the law. Bowen v. N. Y. C. R. R. Co., 18 N. Y. 408 [72 Am. Dec. 529]. This care extends to all measures necessary and proper to secure the safety of the train and passengers as well as to the management of the train itself. * * * The statute authorizes the defendant to cross roads above or below the surface of wagon roads. It simply gives to defendant the power. It does not impose the obligation to do so. The defendant may keep a watchman where it crosses such roads on the same surface. The statute does not require it. The defendant may run slower at such a point. The statute does not direct it. But the defendant must neglect all these precautions at its peril. Either one will give safety to its passengers. If it will neglect and disregard all, it does so at the peril of being answerable for all damages to its passengers caused by such neglect. * * * The cars on this occasion were on a straight plain for two miles, directly before they reached this place. It was in the open day, the cow, of course, plainly visible to those upon the engine; yet the train rushes with undiminished speed until the injuries occurred. The engineer, of course, saw, or might have seen, her. The result to the defendant is the same in either case. If her being there was a surprise to him, he should have seen her in the exertion of that extreme care he was bound to exhibit at such a place, and then the defendant would have been liable if the accident might have been avoided by the most skillful and prompt use of all the means in its power. * * * But it is insisted that, if the defendant be held responsible for such accident, it will be compelled to keep a watchman at road crossings, and that such an expense the defendant could not afford. The plain answer to such a position is that the law requires of defendant the exercise of the highest care that human prudence and foresight can suggest for the safety of its passengers. If such a measure be necessary, it must be adopted or defendant must answer the consequences."

In the case at bar the defendant insists that the measure of its obligation to the plaintiff was to use the care and skill which ordinarily prudent men would exercise under like circumstances, and that, therefore, under the evidence in this case, it is not liable. The defendant calls attention to the case of Stierle v. Union Ry. Co., 156 N. Y. 70, 50 N. E. 419, in which it was said:

"The obligation of carriers of passengers to exercise the highest degree of care which human prudence and foresight can suggest only exists with respect to those results which are naturally to be apprehended from unsafe roadbeds, defective machinery, imperfect cars, and other conditions endangering the success of the undertaking. Morris v. N. Y. C. & H. R. R. Co., 106

N. Y. 678, 13 N. E. 455; Palmer v. Penn Co., 111 N. Y. 488, 18 N. E. 859, 2 L. R. A. 252; Palmer v. D. & H. C. Co., 120 N. Y. 170, 24 N. E. 302, 17 Am. St. Rep. 629. In every case the degree of care to be exercised is dependent upon the circumstances, and, if the accident is attributable to the existence of defects in the road, or in the mechanical appliances availed of for the operation of the railroad by reason of which there was a possibility of loss of life or limb to the traveling public, the strict rule requiring the highest degree of care and of human skill would be applicable. The common carrier is not an insurer of the safety of its passengers; but it is, and properly should be, bound to use its utmost skill and vigilance to guard against the possibility of accidents from the condition of its road and of the machinery in the transportation of passengers. In this case the plaintiff, if he was to be believed, was injured because of the alleged negligent manner in which the driver of the car attempted to move or switch his car from one track to the other, in order to cross the Harlem River bridge, then being repaired and permitting the use of only one track. Under those circumstances, the defendant was only liable for the failure of the driver to use that skill and care which would be required of an ordinarily careful and prudent man. * * * However, the rule * * * might be correct under different circumstances."

In the Stierle Case, above quoted, the correctness of the learned trial judge's charge to the jury was being reviewed and the Court of Appeals held that error was committed in charging as applicable to the case there at bar that the degree of care required of the defendant was all the care and skill which human prudence and foresight could suggest. It was not held in that case, nor in any other case, that under facts similar to the case at bar a question of fact was not presented for determination by a jury. Upon the evidence presented in this case, the court should have permitted the jury to say whether in the exercise of the highest care that human prudence and foresight could suggest the railroad company should not have taken some means to guard the crossing by gates or a flagman so as to prevent such an accident, and whether the employés of the defendant in charge of the train omitted to do anything which in the exercise of ordinary care and prudence reasonable men would have done to have avoided the accident.

It follows, therefore, that the order and judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. FOOTE, J., concurs. KRUSE, J., concurs in result in a memorandum. SPRING and ROBSON, JJ., dissent.

KRUSE, J. I concur because it can be found from the evidence that the engineer and fireman were negligent in failing to give the usual crossing signals, and, if that had been done, the accident would not have occurred. While the engineer was entirely justified in attempting to stop his train after he discovered that a collision with the man on the crossing was imminent, still, if the man went upon the track through the negligent failure to give him proper warning, the defendant is liable for the injury to the plaintiff passenger, resulting from the sudden and abrupt slowing down and stoppage of the train; and that, I think, is so, even though the man who was killed at the crossing was also negligent in going upon the tracks.